WELCH, Collector of Internal Revenue, v. ST. HELENS PETROLEUM CO., Limited, and three other cases.

Nos. 7488–7493.

Circuit Court of Appeals, Ninth Circuit.
July 9, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and M. H. Eustace, Sp. Assts. to the Atty. Gen., and Peirson M. Hall, U. S. Atty., Alva C. Baird, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellants.

Joseph D. Peeler, of Los Angeles, Cal., and George M. Naus, of San Francisco, Cal. (George M. Wolcott and Donald V. Hunter, both of Washington, D. C., of counsel), for appellees.

William H. Hotchkiss, John S. Breckinridge, Arthur A. Ballantine, and George E. Cleary, all of New York City, and A. L. Weil, of San Francisco, Cal., amici curiæ.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

These actions were brought by the taxpayers, St. Helens Petroleum Company, Limited, a British Corporation, and the Kern River Oilfields of California, Limited, a British corporation, to recover money paid for excess profit taxes and income taxes upon incomes accruing to the taxpayers derived from oil wells in California. The primary question involved is whether or not the amounts of taxes paid upon their incomes to the British government under the British law imposing such taxes are to be deducted from the gross incomes of the companies derived from their oil wells in California in the proportion fixed by the law of the United States in ascertaining the net incomes upon which the excess profit taxes and the income taxes are to be determined. The Commissioner of Internal Revenue, in fixing the amounts of taxes to be paid by the taxpayers, made no deduction for the taxes paid to the British government.

■ After the argument the appellees moved to strike out the bill of exceptions in each of these cases "upon the ground that none of said bills affirmatively shows that it was settled or signed or authenticated within either the term of court in which the trial occurred or the term of court in which judgment was entered, nor within any valid extension of either of said terms." Appellees cite in support of their motion our decision in United States v. Payne (C. C. A.) 72 F.(2d) 593. That decision, however, is not controlling here. The certificate to the bill of exceptions in each of these cases is in the following language: "The following Bill of Exceptions duly proposed and agreed upon by counsel for the respective parties, is correct in all respects and is hereby approved, allowed and settled and made a part of the record herein and said Bill of Exceptions may be used by the parties plaintiff or defendant upon any appeal taken by either party plaintiff or defendant."

The trial judge having certified to the fact that each of the bills of exceptions had been "duly proposed," it thus affirmatively appears that each of the bills of exceptions was submitted to the court for settlement within the time allowed by law. The motion to strike the bills of exceptions is denied.

■ The three actions, cases Nos. 7489, 7491, and 7492, brought by the Kern River Oilfields of California, Limited, are to recover a portion of the taxes paid for the fiscal years ending May 31, 1923, 1924, and 1925. The three actions, cases Nos. 7488, 7490, and 7493, brought by the St. Helens Petroleum Company, Limited, are to recover a portion of taxes paid for the fiscal years ending May 31, 1921, and May 31, 1922, and also involve the collection of excess profit taxes determined under section 328 of the Revenue Acts of 1918 and 1921 (40 Stat. 1057, 1093; 42 Stat. 227, 275), as to which there is an independent question concerning the power of the court to render judgment in favor of the taxpayer. This issue is not involved in the other cases, because no excess profit tax was imposed for any period after December 31, 1921.

The one issue common to all these cases is whether or not under section 234 (a) of the Revenue Act of 1921 (42 Stat. 227, 254), and the corresponding and practically identical provisions of the Revenue Act of 1918 (40 Stat. 1057, 1077), the taxes paid by these British corporations to the British government should be deducted from their gross incomes in determining their net incomes taxable under the law of the United States. In this connection it should be stated that the parties have agreed to the amount of the deduction to which the taxpayers are, entitled on account of the payment of British taxes, if they are entitled to any deduction therefor. For example, in case No. 7488 it is agreed that the amount to be deducted, if any, is $41,553.05, being 99.75 per cent. of the total tax of $41,657.19 paid to the British government; it being agreed that income of the taxpayer from sources within the United States during the fiscal year ending May 31, 1921, was 99.75 per cent. of the total net income of plaintiff from all sources during said taxable year. The excess profit tax upon the St. Helens Petroleum Company, Limited, for the fiscal year ending May 31, 1921, was fixed by the Commissioner at $525,320.16. The income tax for the same period was based upon a net income of $2,350,425.78, less interest on United States obligations, $143,352.56, and excess profit tax as aforesaid of $525,320.16, leaving net income of $1,681,753.06 taxable at the rate of 10 per cent., amounting to $168,175.31.

Section 234 (a) of the Revenue Act of 1921, supra, directs that, in computing the

net income of a corporation subject to the tax imposed by section 230, there shall be allowed as deductions " * * * (3) taxes paid or accrued within the taxable year." Section 234 (b) of the Revenue Act of 1921 provides: "In the case of a foreign corporation * * * the deductions allowed in subdivision (a) shall be allowed only if and to the extent that they are connected with income from sources within the United States. * * *" The question is whether the taxes paid to Great Britain come within the meaning of the phrase "taxes paid" in section 234 (a) (3) of the Revenue Act of 1921. That the tax in question was a tax paid to the British government by the corporation is conceded. The point made by the collector is that, although the tax was paid in the first instance by the corporation to the British government, it is not a tax of the corporation taxpayer such as is contemplated by the statute permitting a deduction (234 (a) (3), supra), because the tax was ultimately returned by the stockholder to the corporation, and the tax, although paid by the corporation in the first instance, was really one imposed upon the dividends received by the stockholder, and thus a tax of the stockholder and not of the corporation. It is urged that the corporation, in paying the tax, was merely the agent of the stockholder. It appears from the British statutes and decisions quoted by the parties and presented to this court by stipulation that, under the law of Great Britain, although the tax upon the profits of the corporation is paid in the first instance by the corporation at the current rate for the year in which the tax is paid, when the corporation thereafter declares a dividend from its profit, it may deduct from the dividend paid to each stockholder a credit for the payment of such tax equal to the tax upon the amount of the dividend at the current rate for the year in which the dividend is paid. It thus appears that, if the tax rate in the year in which the tax is paid by the corporation differs from the tax rate in the year in which the corresponding dividend is paid to the stockholder, the amount paid by the corporation and the amount retained by the corporation from the dividends paid would not be identical.

In the case at bar, however, it is stipulated that the total amount paid by the corporation was deducted from the dividends paid, and presumably the dividend was paid in the same year that the corporation paid the tax. It appears from the stipulation that the corporation had been completely reimbursed for the tax which it paid, and at first blush it might seem that the payment and recoupment of taxes would counterbalance each other and that in a strict sense the corporation had not paid any tax at all. On the other hand, it is to be observed that the corporation, while recognized as a legal entity, is in fact owned by the stockholders, and in one of its aspects is merely a creation of its stockholders who operate through the corporation. Consequently, the burden of any tax paid by the corporation must ultimately fall upon the stockholders. It does, however, appear from the decisions of the British courts that in estimating the amount of taxes due from individual stockholders to the government the stockholder is charged with the entire dividend derived from the corporation; that this income is added to his other income, and, after appropriate deductions from his gross income, the amount of his tax is estimated. If it appears that the total tax charged to him is less than that which had been deducted from the dividend paid him by the corporation (and the same would probably be true with reference to the other sources of income from which similar deductions had been made), the government refunds directly to the stockholder the excess tax paid. In such an instance the stockholder is treated as if he were the taxpayer who paid to the British government the amount which had been deducted for taxes by the corporation from the dividend paid to him; that is to say, although the corporation had in the first instance paid the entire tax to the government, the government in adjusting the taxes due from the stockholder treats the amount deducted by the corporation from his dividend as if it were paid directly by him to the government. There are other instances which we need not cite where the British government recognizes the tax paid by the corporation for certain purposes as a tax paid by the stockholder. In a recent tax case before the House of Lords (Neumann v. Commissioners of Inland Revenue, [K. B.] 49 T. L. R. 1, [C. A. 1933] 1 K. B. 728, and [H. L. 1934] A. C. 215), the relation of the stockholder to a tax paid by a corporation and subsequently deducted from a dividend paid to him was considered. In discussing the case, Lord Wright said:

"The shareholder and the company are no doubt separate entities: the company is not an agent for the shareholder to pay tax on the dividend, nor is the company the collector for the Revenue to deduct the tax from the dividend. The company is the taxpayer. The shareholder has no right to any share in the profits till a dividend is declared: the company may use the profits in any way it pleases vis-a-vis any shareholder: it may put them to reserve or capitalize them or use them for extensions or improvements: the profits declared and paid as dividends in one year may have been made in previous years when the standard rate of tax was different: it is only very rarely and in exceptional cases that dividends are paid out of any particular source of profit: usually they are paid out of the general revenue fund of the company. What is essential to the requirements of the Inland Revenue is that all the profits of the company should be taxed and if that is done the Revenue is not concerned with what is done with these profits. The company is not bound but only authorized to deduct tax in paying dividends: whether it deducts or not is left to its discretion because the profits once having been taxed in the company's hands, do not bear further tax (apart from surtax) in the shareholders' hands. There is in fact only one profit, no new profit being created from the fact that the shareholder gets his share: the tax is a tax on the profits and not on the dividend. But if tax is deducted from the dividend the Acts have provided that it is to be at the standard rate of tax of the year of the dividend, in order to avoid obvious difficulties which might arise because profits divided in one year may have been earned in other years."

Lord Tomlin, in the same case, states: "Now I may say at once that, having regard to the view which I have expressed as to the general scheme and operation of the Income Tax Acts in regard to dividends, I am unable to accept the view that dividends as such are taxable under Sch. D. I do not think they are. I think it is accurate to say as Rowlatt J. said in Purdie v. The King ([1914] 3 K. B. 112, 116): 'There is, strictly speaking, no tax upon dividends at all.' They are, however, under r. 20 of the General Rules and s. 39 of the Finance Act, 1927, and apart altogether from s. 7 of the Finance Act, 1931, liable, where the dividends are made out of profits or gains charged on the Company, to suffer deduction of a sum equal to tax at the standard rate on the gross amount of the dividends, and in such cases the gross amount of the dividend is the income tax income to be taken into account whether it be for computing the amount of tax which the shareholder is entitled to have returned or for fixing his liability to surtax." The order proposed by Lord Tomlin, concurred in by Lord Wright and Lord Warrington of Clyffe, was adopted by the House of Lords.

We conclude that in determining the net incomes taxable to the appellee corporations that the law required the deduction of the taxes they had paid to the British government upon income from sources within the United States.

This conclusion would result in a corresponding reduction in the amounts of income taxes payable by the taxpayers. Consequently, the decisions in cases Nos. 7491, 7492, and 7489 should be affirmed.

■ The next question is whether or not any portion of the taxes paid by the St. Helens Petroleum Company, Limited, can be recovered because of the failure of the Commissioner to deduct the taxes paid to Great Britain from its gross income in levying the tax. It follows from what we have said with reference to the right of the taxpayer to deduct the taxes paid to the British government from its gross income in estimating its net income for the purpose of determining the tax that the St. Helens Petroleum Company, Limited, is entitled to such a deduction in determining its income tax for the years in question. The collector, however, contends that the judgments in favor of the St. Helens Petroleum Company, Limited, include, not only income tax, but also excess profit tax. This appears to be true, although there is no segregation in the complaint showing the amount of income taxes and the amount of excess profit taxes sought to be recovered. There is no finding which indicates the portion of the recovery which is attributable to excess profit tax and the portion attributable to income tax. But it is clear from the record that the amounts recovered embrace both income and excess profit taxes. The collector contends that the court erred in estimating the amount of the excess profit tax, that this tax is to be determined by the Commissioner, and that the discretion

of the Commissioner cannot be reviewed by the court.

We will now consider the excess profit tax:

This tax was determined under the provisions of section 328 of the Revenue Acts of 1918 and 1921, supra. Under this section the Commissioner is directed to compare the taxpayer with such representative corporations as he may select, "whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances."

It is claimed by the collector that, as these various elements entering into the determination of tax are to be fixed by the Commissioner, the courts cannot fix the amount of the tax, and this is true, notwithstanding the fact that the rate of tax may have been fixed by the Commissioner as a result of such comparison. It has been argued by the corporation that, where the rate of taxation has been fixed by the Commissioner after considering the various factors entering into it, and where the court can determine the amount of income or profit subject to the tax, it can apply the rate fixed by the Commissioner to the base thus determined and ascertain the amount of tax which should have been paid and adjudge a refund of the balance. This view, however, was expressly rejected by the Supreme Court in the case of Heiner v. Diamond Alkali Co., 288 U. S. 502, 507, 53 S. Ct. 413, 77 L. Ed. 921. The appellee concedes the force of this conclusion, but points out that it is based in part upon the exercise of discretion by the Commissioner in determining that the taxpayer should be permitted a more favorable determination of his tax under section 328, and, consequently argues that, in the case of a foreign corporation, no discretion is to be exercised by the Commissioner in determining the method of taxation because the statute grants to every foreign corporation the more favorable method of taxation provided by section 328. Appellee consequently contends that the numerous decisions of the courts holding that they cannot entertain an action to recover an excess profit tax paid by a corporation where such tax has been ascertained upon the request of the corporation under the provision of section 328 have no application to the case of a foreign corporation whose tax is directed by law to be assessed in that method. The tax paid by a foreign corporation was considered by the Circuit Court of Appeals for the Second Circuit in Brown's "Shamrock" Linens, Ltd., v. Bowers (C. C. A.) 48 F.(2d) 103. In that case a foreign corporation sought a refund of taxes on the ground that the Commissioner had used improper comparatives in determining the plaintiff's excess profit taxes. The case was dismissed by the District Court and the dismissal affirmed by the Circuit Court of Appeals on the ground that the court could not undertake to determine the proper comparatives in fixing the rate of taxation. Certiorari was denied by the Supreme Court, 283 U. S. 865, 51 S. Ct. 657, 75 L. Ed. 1470. It is contended by the corporation that this decision is not decisive of the question involved in the case at bar because here the taxpayer concedes the conclusiveness of the rate fixed by the Commissioner and only questions the proper base upon which the tax should be computed, namely, the amount of net income, and this because of the failure of the Commissioner to deduct from the gross income the tax paid to the British government in fixing the net income. In the case at bar, the amount of tax paid to the British government is relatively so small as compared with the profit tax of $525,320.16 fixed by the Commissioner that it is altogether unlikely that the deduction of the British tax from the gross income would materially change the determination of the rate of taxation by the Commissioner. However, this fact does not give the court power which it otherwise would not have to fix the amount of the profit tax. This power is vested in the Commissioner under section 328, supra. The court cannot determine what would be the effect upon the total tax of a change of the amount of net income. That question lies in the discretion of the Commissioner, and, so far as we know, a change of the net income might result in a corresponding change in rate. While it may be true in the case at bar that the Commissioner would have selected the same rate whether or not he allowed the relatively small deduction of the British tax, it is obvious that the rate of taxation might be materially changed by the Commissioner by reason of the com-

parisons with other corporations and taxpayers required to be made by him in fixing the amount of tax. We conclude that the decisions of the Supreme Court in Heiner v. Diamond Alkali Co., supra, and of the Circuit Court of Appeals for the Second Circuit in Brown's "Shamrock" Linens Co., Ltd., v. Bowers, are applicable to the case at bar, and that, in the absence of some allegation of fraud, the court cannot inquire into the validity or amount of the profit tax.

The Collector also contends that, inasmuch as the excess profit tax is deducted from the gross income in estimating the net income upon which taxes must be paid, the tax upon the net income is also dependent upon the discretion of the Commissioner in estimating the excess profit tax which is reflected in the income tax by virtue of the deduction. Our conclusion that the excess profit tax fixed by the Commissioner cannot be ,disturbed by the court removes this factor of uncertainty, and it follows that the excess profit tax as fixed by the Commissioner is to be deducted from gross income in ascertaining the net income upon which the income tax is to be estimated. The appellee claims that, as it has shown a failure of the Commissioner to make deductions from its gross income to which it is entitled for the purposes of fixing the excess profit tax, the burden of proof shifted to the appellant to show the correct amount of the tax after allowing such deductions. This rule as to the burden of proof has recently been applied by the Supreme Court on an appeal from a decision of the Circuit Court of Appeals, 70 F.(2d) 619, reversing the Board of Tax Appeals (Helvering v. Taylor, 293 U. S. 507, 55 S. Ct. 287, 290, 79 L. Ed. 623), but it was pointed out in that case that the rule was the reverse in an action to recover a tax paid; referring to such a case, the court said: "Obviously the burden was on the plaintiff, in order to establish a basis for judgment in his favor, specifically to show not merely that the assessment was erroneous, but also the amount to which he was entitled. For like reason the burden is upon the taxpayer to establish the amount of a deduction claimed. Burnet v. Houston, 283 U. S. 223, 227, 51 S. Ct. 413, 75 L. Ed. '991; Helvering v. Independent Life Ins. Co., 292 U. S. 371, 381, 54 S. Ct. 758, 78 L. Ed. 1311; New Colonial Co. v. Helvering, 292 U. S. 435, 440, 54 S. Ct. 788, 78 L. Ed. 1348."

The Supreme Court cites in support of this rule its previous decisions in United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347; Reinecke v. Spalding, 280 U. S. 227, 232, 50 S. Ct. 96, 74 L. Ed. 385.

The same considerations that apply to the failure to deduct the amount of tax paid to the British government apply also to two errors in determining the net income for the year ending May 31, 1921 which are admitted by the Commissioner; one, a mathematical error of $12,000, and, the other, an error in determining the depletion allowance amounting to $6,604.41.

The amount of deductions from the gross income of the St. Helens Petroleum Company, Limited, for the fiscal year 1922 are different from the amounts above stated for the year 1921, but there is no difference in principal. Hence it is unnecessary to state the facts in further detail. There is no difficulty in ascertaining the proper amount of income tax to be paid by the St. Helens Petroleum Company, Limited, for the fiscal years 1921 and 1922.

The judgment of the lower court is affirmed in cases Nos. 7491, 7492, and 7489, and reversed in cases Nos. 7488, 7490, and 7493, for further proceedings with relation to income taxes only in accordance with this opinion.