**UNITED SHOE MACHINERY CORPORATION v. WHITE, Collector of Internal Revenue.**

**SAME v. NICHOLS, Former Collector of Internal Revenue.**

District Court, D. Massachusetts.
Dec. 6, 1935.

Choate, Hall & Stewart and Frank W. Knowlton, all of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to the U. S. Atty., both of Boston, Mass., Frank J. Wideman, Asst. Atty. Gen., and Andrew D. Sharpe and John G. Remey, Sp. Assts. to the Atty. Gen., for defendants.

McLELLAN, District Judge.

In these actions at law the plaintiff seeks to recover in separate counts varying sums which it was compelled to pay by way of income taxes for the years 1923 to 1926, inclusive. The cases were tried on agreed statements of facts on file, on certain papers marked as exhibits, on an oral stipulation to be stated presently, and upon the testimony of Mr. James Allan, who had charge of the tax department of the United Shoe Machinery Corporation.

From Mr. Allan's testimony I find that he had correspondence and conferences with the Commissioner of Internal Revenue, his deputies and subordinates, and submitted certain claims for foreign credits already in evidence. The Bureau of Internal Revenue asked him for detailed information in regard to various foreign taxes and this information he furnished as requested. No statement was ever made to him, and he heard of none, to the effect that he had not given sufficiently detailed information to the Bureau of Internal Revenue.

The oral stipulation was that "The court may refer to the British income tax and corporation profits tax laws and the decisions of the British courts thereon to the same extent as if they had been introduced in evidence."

The other and principal facts are such as appear in the written agreed statements of fact and in the exhibits, which agreed statements and exhibits are incorporated herein by reference. There is no occasion to repeat the facts thus found in detail, and I shall state here only my conclusions of fact and law.

■ At the outset, a preliminary matter pertaining only to a single count requires decision. A claim for credit filed under section 238 of the Revenue Act of 1921, 42 Stat. 227, 258, on the regular Form 1118 does not constitute a sufficient claim for refund under the provisions of United States Code, title 26, § 156 (26 U.S.C.A. §§ 1672–1673) and for the reason that no claim for refund was filed, the action cannot be maintained as to the first count in the case numbered 4978. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; Arizona Commercial Mining Company v. Casey (D.C.Mass.) 32 F.(2d) 288. See, also, Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, at page 142, 41 S.Ct. 55, 56, 65 L.Ed. 188, holding that the statute authorizing an appeal required a claim to be filed after payment of the tax, and that a claim for abatement made to the Commissioner before payment was not enough, and where Mr. Justice Holmes said:

"It is urged that the 'appeal' to him to remit made a second appeal to him to refund an idle act and satisfied the requirement of § 3226 [26 U.S.C.A. §§ 1672–1673 and note]. Decisions to that effect in suits against a collector are cited, the latest being Loomis v. Wattles (C.C.A.) 266 F. 876. But the words 'on appeal to him made' mean, of course, on appeal in respect of the relief sought on appeal— to refund if refunding is what he is asked to do. The words of § 3226 also must be taken to mean an appeal after payment, especially in view of § 3228 [26 U.S.C.A. § 1433 and note], requiring claims of this sort to be presented to the Commissioner within two years after the cause of action accrued. * * *

"Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with. * * * But in this

case we cannot pronounce the second appeal a mere form. On appeal a judge sometimes concurs in a reversal of his decision below. It is possible as suggested by the Court of Claims that the second appeal may be heard by a different person. At all events the words are there in the statute and the regulations, and the Court is of opinion that they mark the conditions of the claimant's right."

As to the other counts in both actions, the plaintiff duly filed claims for refund and its right to recover depends upon two questions. Unless the first question is resolved in the plaintiff's favor, neither action can be maintained. If both questions are decided in the plaintiff's favor, it is entitled to judgment. If the second question is resolved in favor of the defendant, I cannot tell whether the plaintiff is entitled to judgment for something, and if so, for what. In such event, a recomputation of the tax is required.

The credits for foreign taxes here involved are governed by sections 238 (a) and (e) of the Revenue Acts of 1921 (42 Stat. 258), 1924 (43 Stat. 286), and 1926 (44 Stat. 44). These sections as they appear in the three acts are so nearly identical that for practical purposes it is enough to refer to those sections of the Revenue Act of 1921, which follow:

"Sec. 238. (a) That in the case of a domestic corporation the tax imposed by this title, plus the war-profits and excess-profits taxes, if any, shall be credited with the amount of any income, war-profits, and excess-profits taxes paid during the same taxable year to any foreign country, or to any possession of the United States: Provided, that the amount of credit taken under this subdivision shall in no case exceed the same proportion of the taxes, against which such credit is taken, which the taxpayer's net income (computed without deduction for any income, war-profits, and excess-profits taxes imposed by any foreign country or possession of the United States) from sources without the United States bears to its entire net income (computed without such deduction) for the same taxable year."

"Sec. 238. (e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year shall be deemed to have paid the same proportion of any in-

come, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: Provided, That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included."

The defendant urges that the limitation on the amount allowable under subdivision (a) as a credit for foreign taxes paid by a domestic corporation applies to the credit allowed under subdivision (e) for taxes paid by its foreign subsidiaries. The plaintiff urges the contrary, and contends that these two subdivisions provide for separate and distinct credits, each with its limiting proviso. The defendant contends that any such construction of this section will mean that in certain cases the taxpayer will pay less than the American rate on the purely American income, and that since Congress could not have intended such a result, section 238 (e) should be construed to read back to the opening words of section 238 (a), and hence that the limiting proviso which follows in 238 (a) should be held applicable to both subdivisions.

The ambiguity, if any, arises from the phrase in subdivision (e) "For the purposes of this section a domestic corporation * * * shall be deemed to have paid. * * *" The defendant says this means for the purpose of giving the credit provided for in subdivision (a). But the statute does not so provide. Subdivision (e) says "for the purposes of this section," and the purpose of the whole section is plainly to provide for avoiding double taxation by allowing credit for foreign taxes paid under certain circumstances. Burnet v. Chicago Portrait Company, 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587. There is nothing to show that the purposes of section 238 are limited to those set forth in subdivision (a) of that section. The principle stated in Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156, and Burnet v. Niagara Falls

Brewing Company, 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, that taxing statutes are construed strictly in favor of the taxpayer, is here applicable.

The legislative history of the statute supports the construction urged by the plaintiff. In the act of 1918, these two subdivisions were in separate sections (40 Stat. 1080, 1081, §§ 238, 240). As soon as that act was in operation, it became evident that with the high taxes prevailing in Europe directly after the war, the credit for foreign taxes might easily swallow up the tax on the purely American income. Hence, in the act of 1921, limitations on the amount of credits to be so taken were for the first time introduced. If at that time Congress had considered the two subdivisions as interrelated in the manner contended by the defendant, it would not have provided the special limitation created in subdivision (e). The discussion of subdivision (e) in the Senate indicates that Congress at that time had no idea that the credit under subdivision (e) was controlled by or subject to any other proviso more general in scope such as appears in subdivision (a). When section 238 (e) was first proposed in its present form, Senator Smoot read a short explanation of the purpose of the amendment under consideration, and said:

"In order to protect the American tax, a further limitation is established. It is provided that the credit allowed to the American parent company shall in no case exceed the same proportion of the American tax, which the amount of dividends from the foreign subsidiary bears to the entire net income of the American parent company. Suppose the total income of the American company is $400,000 and the total American tax is $60,000. Of this total income, $50,000, or one-eighth, consists of dividends from the foreign company. Obviously, the foreign credit should not be permitted to wipe out or cancel a tax based upon purely American income. In order to prevent abuse, therefore, the entire credit in question is further limited, so that it cannot exceed one-eighth of the American tax, i. e., in this particular illustration, cannot exceed one-eighth of $60,000, or $7500.

"A provision of this kind, giving the credit to a domestic corporation which owns a majority of the stock of a foreign corporation, is contained in Section 240 (c) of the Revenue Act of 1918. The amendment here under discussion merely reincorporates this credit in the proposed Revenue Act of 1921, with safeguards designed to protect the American tax as above described. In short, the amendment in question is merely an improved version of the existing provision of law." Congressional Record, vol. 61, part VII, p. 7184.

Apparently this subdivision was regarded as granting a separate credit in the special case of the foreign subsidiary, and that hence a limitation of some kind was needed. Since the limitation was to go with a credit provision granting credit in a comparatively narrow class of cases, it was drawn in such words as to be applicable only to that class. As heretofore stated, it seems that Congress at that time had no idea the credit in question was controlled by another proviso more general in scope.

The first time a general limiting proviso was inserted, applicable to all kinds of credits, was in the act of 1928. And it is significant that though the language of section 238 (e) appears in the act of 1928 (section 131 (f), 26 U.S.C.A. § 131 and note), it apparently was found to be no longer of use, and, consequently, was eliminated in subsequent revenue acts.

If there were nothing more to this aspect of the case than has been stated, a conclusion that the limitation on the amount allowable under section 238 (a) as a credit for foreign taxes paid by a domestic corporation does not apply to the credit allowed under section 238 (e) for taxes paid by its foreign subsidiaries might be regarded as somewhat doubtful. If the construction for which the plaintiff contends is thought not to be absolutely required in the light of the language used in the statute, its legislative history and the Congressional proceedings, this does not end the matter. If the construction for which the plaintiff contends is not imperative, but is only so far in doubt as to be merely admissible, the circumstances here presented are such as to require the court to consider the construction put upon the statute by the Treasury Department. From the time the language in question was first enacted until some time in 1929, the Treasury Department gave the language in this subdivision the interpretation now sought by the plaintiff. Regulations 62 promulgated by the Commissioner under the act of 1921, and approved

by the Secretary of the Treasury, provided in article 383 with respect to individual claims for credit for foreign taxes that in order to secure any credit the taxpayer must fill out a form known as Form 1116, "with the calculations of credits there indicated." By article 612, corporations seeking credit under section 238 (e) of the act were directed to pursue the same course, except that Form 1118 was to be used instead. Similar articles are to be found in subsequent regulations promulgated under the acts of 1924 and 1926. It is undisputed that Form 1118 provided for a separate computation of credits under the two subdivisions, each with its own limitation. and then provided a place for adding the two together, and indicated that the sum of the two was the amount finally to be allowed as the total credit. Not until 1929 is there anything to show that the officials charged with the enforcement of the act ever took any other view. The ruling I. T. 2235, C. B. December, 1925, page 82, follows the usual practice under Form 1118. Not until 1931 was the present position of the defendants adopted in a formal Treasury Department ruling. The department did not begin to take the position now urged on behalf of the defendants until after the act of 1928 had gone into effect, establishing for the first time an express limitation on all credits.

■ It seems to be well settled by a long series of decisions in the Supreme Court of the United States that where an act has received contemporaneous construction by the officials charged with its enforcement, such construction, while not absolutely binding on the court, is entitled to the greatest respect and will not be departed from except for weighty reasons. This is particularly true where the government has previously decided in favor of a private individual or corporation. In such case, a change may result not only in inequity of treatment of similarly situated taxpayers, but may come after many persons have acted extensively on the faith of the earlier practice. Edwards v. Darby, 12 Wheat. 206, 6 L.Ed. 603; United States v. Alabama Great Southern Railroad Company, 142 U.S. 615, 12 S.Ct. 306, 35 L.Ed. 1134; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Universal Battery Company v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051; Fawcus Machine Company v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L. Ed. 397; McCaughn v. Hershey Chocolate

Company, 283 U.S. 488, 51 S.Ct. 510, 75 L.Ed. 1183; F. H. Peavey & Co. v. United States (Ct.Cl.) 55 F.(2d) 516.

In this connection I am not unmindful of the decision of the Board of Tax Appeals in Omega Chemical Company v. Commissioner, 31 B.T.A. 1108, decided 1935, in which the effect of the consistent practice of the department during the entire time the sections of the act now under consideration were in force is not considered.

The first question in these cases, involving the construction of sections 238 (a) and (e) of the Revenue Acts, is solved in favor of the plaintiff.

The second question is raised by the amended answers of the defendants, filed April 24, 1935. In these amended answers the defendants say in substance that in previous computations of the tax liability of the plaintiff, certain taxes paid by the British subsidiary of the plaintiff were allowed as taxes paid by the plaintiff, whereas a true interpretation of the British taxing system shows that these were in fact taxes paid by the subsidiary. It is said that these credits should have been allowed under section 238 (e) instead of under section 238 (a), so that the plaintiff has in fact underpaid its taxes for the years in question.

■ Actions of the kind here brought against a tax collector to recover taxes alleged to have been illegally or erroneously assessed are in the nature of actions for money had and received, and the defendant may set up in defense any fact which upon established principles prevents the plaintiff in equity and good conscience from recovering the entire amount sought. The case of New York Life Insurance Company v. Anderson (D.C.) 257 F. 576, 577, reversed on other grounds but affirmed in this respect in (C.C.A.) 263 F. 527, is in point. In that action against a collector to recover taxes alleged to have been illegally collected, the defendant was allowed to show underpayment on other items for the same years, and the amount of such underpayment was deducted from the amount of the final judgment. At nisi prius, Judge Learned Hand said: "The case is an action for money had and received, and it is well settled that in that action a plaintiff can recover only such money as he is in equity and good conscience entitled to, and as the defendant is not entitled to retain. Cary v. Cur-

tis, 3 How. 236, 246, 11 L.Ed. 576; Gaines v. Miller, 111 U.S. 395, 397, 4 S.Ct. 426, 28 L.Ed. 466." See, also, Hartwell Mills v. Rose (C.C.A.) 61 F.(2d) 441.

The defendants' position, as stated in their amended answers, constitutes a startling reversal of their former practice, but I do not regard such a change of position as of the same importance as in the case of the construction to be put upon the statute, a matter heretofore considered. It is true, as urged by the plaintiff, that since the original passage of the acts allowing for credits for taxes paid to foreign governments, the department has consistently ruled that the British Corporation Profits Tax was a tax paid by the stockholder, and that at the time the defendants filed their amended answers, the government was vigorously but unsuccessfully seeking to sustain its former practice in the Circuit Court of Appeals for the Ninth Circuit. On this second branch of the cases at bar, we are dealing, however, not with any doubtful interpretation of the Revenue Acts. These acts are perfectly clear in so far as they bear upon the present question. They provide one method for computing credit for foreign taxes "paid" by the domestic taxpayer and another method for computing the credit to be allowed for taxes "paid" by a foreign subsidiary of the domestic taxpayer. The only question involved is the nature of the English Corporation Profits Tax, which, being a question of foreign law, is one of fact entering into the proper assessment of the taxes in question. If the former attitude and practice of the department sheds light upon this question of fact, I see no reason for refusing all the light that can be had. But, as stated above, the proper solution of this problem depends essentially upon the British Act and British decisions.

The general scheme of income taxes in Great Britain consists of a General Act, which serves as a basis for the levying of the actual duties by other acts which are passed at more frequent intervals and fix the amounts of the various duties as the necessities of the government may demand. The last general legislation on the income taxes here involved is the Income Tax Act of 1918. The act superseded similar legislation which had been in force since 1842. The British Income Tax, the duty here being considered, was levied by the Finance Act of 1920.

It is provided in the act of 1918: "Part I. Sec. I. Where any act enacts that income tax shall be charged for that year at any rate, the tax at that rate shall be charged for that year. in respect of all property, profits, or gains respectively described or comprised in the schedules marked A, B, C, D and E, contained in the first Schedule to this Act and in accordance with the rules respectively applicable to those Schedules." The act also provides for exemption and relief direct from the Internal Revenue in favor of stockholders whose total income for a given year is less than a certain amount, and for a supertax on the incomes of stockholders and others whose total income for the given year is more than a certain amount. As a step in the computation of total income for these purposes, it is provided in rule 20, applicable to all schedules, that "The profits or gains to be charged on any body of persons shall be computed in accordance with the provisions of this Act on the full amount of the same before any dividend thereof is made in respect of any share, right, or title thereto, and the body of persons paying such dividend shall be entitled to deduct the tax appropriate thereto."

In practice under this rule the corporation either declares a dividend and then deducts a certain amount for tax, or declares a dividend to be "tax free" and states what the dividend would have been had not the tax at a certain rate been first deducted. It is to be observed that these are only two ways of making out the warrant for a dividend. The effect is the same in either case. The shareholder is then required to return the gross amount for the purposes of computing his total income and not the amount actually received.

As a result of this practice, under rule 20 and its predecessor, section 54 of the Income Tax Act of 1842, some judges have spoken of the corporation as being agent for the stockholder in paying the tax. The origin of this statement appears to be Ashton Gas Company v. Attorney General, (1906) A.C. 10. In that case the court held that where a statute forbade a gas company to declare a dividend of more than 10 per cent., it means inclusive, and not exclusive of income tax. The court said: "But there is a somewhat difficult and complex machinery which makes the officers of the Company officers of the Financial Department of the government for the purpose of collecting the tax." In the next

few years this statement was repeated and amplified in several judicial opinions. One of the last of these statements is to be found in Brooke v. Commissioners of Inland Revenue, [1918] 1 K. B. 257, at page 267, where the court said: " * * * and where the duty is paid by a company in respect of the gains and profits of its business, it pays the income tax as agent for its shareholders, and in that way it is the shareholders as the persons beneficially concerned who bear the burden of the tax." These judicial statements caused some confusion as to the exact nature of the British tax in question, particularly in the Treasury Department of the United States, where the question was of more immediate practical importance than in England. The confusion was cleared, however, by the House of Lords in Singer v. Williams, [1921] 1 A.C. 41, and Commissioners of Inland Revenue v. Blott, [1921] 2 A.C. 171, where it was established that the corporation pays taxes as a taxpayer and not as agent for its shareholders. In the latter case it was held that where a company declares a stock dividend out of surplus profits on which it has already paid its income tax to the Crown, the shareholder need not mention such dividends in making his return of total income for the purposes of computing his supertax. Viscount Cave said, [1921] 2 A.C. 171, at page 201: "Some time was occupied in the discussion of the question whether in paying income tax on its profits, the Company acted as agent for its shareholders, and some cases were cited where this expression had been used. Probably the word was intended only to express in an abbreviated form the effect of s. 54 of the Income Tax Act of 1842. Plainly a Company paying income tax on its profits does not pay it as agent for its shareholders. It pays as a taxpayer, and if no dividend is declared, the shareholders have no direct concern in the payment. If a dividend is declared, the Company is entitled to deduct from such dividend a proportionate part of the amount of the tax previously paid by the company; and in that case, the payment by the Company operates in relief of the shareholder. But no agency

properly so called is involved." These cases were affirmed recently in Neumann v. Inland Revenue Commissioners, [1934] A.C. 215, at page 235, where it was said: " * * * The shareholder and the company are no doubt separate entities; the company is not an agent for the shareholder to pay tax on the dividend, nor is the company the collector for the Revenue to deduct the tax from the dividend. The company is the taxpayer. The shareholder has no right to any share in the profits till a dividend is declared."

I conclude that the British Income Tax is a tax on the company, and that the machinery set up by rule 20 is merely for the purpose of computing fairly the amounts to be returned to stockholders whose incomes are small and the extra amounts to be charged by way of super-tax to stockholders whose incomes are larger.

The second question in these cases now under discussion has recently been considered by the Circuit Court of Appeals for the Ninth Circuit in the case of Welch, Collector, v. St. Helens Petroleum Company, Ltd., 78 F.(2d) 631. The Neumann Case, supra, was followed and the conclusion reached that the British Income Tax was paid by the corporation itself, and not by the shareholder, within the meaning of section 238 of the Revenue Act of 1921.

The defendants prevail as to this portion of the cases.

The stipulation as to facts provides that the amount of judgment, if any, is to be such as may be agreed upon by the parties, and on their failure to reach an agreement, they may be heard and the amount determined by the court. The conclusion at which I have arrived with reference to the second question in these cases requires a recomputation of the taxes, and this should be done by agreement between the parties and the results submitted to me as the basis for orders for judgment as to each count except the first count in case No. 4978, as to which, for the reasons heretofore stated, judgment is to be entered for the defendant.