## BIDDLE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 102.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1936.

William R. Perkins, Forrest Hyde, and Freeman J. Daniels, all of New York City (William R. Spofford, Dudley T. Easby, Jr., and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and F. E. Youngman, Sp. Assts. to the Atty. Gen., for respondent.

William H. Hotchkiss, of New York City (John S. Breckinridge, of New York City, of counsel), amici curiæ.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The petitioner seeks a review of a decision of the Board of Tax Appeals holding that the only amount of income

taxable to her as dividends received from shares of stock which she owned in two British corporations is the net amount of cash actually received as dividends. A further question presented is whether an amount treated as British income taxes "appropriate to" the dividends paid may be partially taken as a credit against petitioner's income tax under section 131 (a) (b) of the Revenue Act of 1928 (45 Stat. 791 [26 U.S.C.A. § 131 and note]) and the balance deducted from gross income under section 23 (c) of the act of 1928 (26 U.S.C.A. § 23 note) as taxes paid to a foreign government.

Petitioner, a citizen residing here, filed her income tax return for the calendar year 1929 during which term she owned ordinary shares of the British-American Tobacco Co., Limited, and ordinary and deferred stock of the Tobacco Securities Trust Company, Limited, both corporations of Great Britain with offices in England. During 1929 petitioner received cash dividends from the British-American Tobacco Company, Limited, "free of British income tax," and from the Tobacco Securities Trust Company, Limited, dividends were paid "less British income tax." The total amount was $193,406.11. At the time of payment, the companies advised and certified to their shareholders that income taxes on the profits of the company, of which the dividends formed a part, had been paid by the companies to the officer for the receipt of taxes. The total amount of the United Kingdom and Dominion income tax "appropriate to" the dividends received by the petitioner for both companies was $47,380.27. This is the amount which gives rise to the present controversy.

There is no dispute as to the cash actually received by the petitioner. In her income tax return for 1929, petitioner claimed a credit against her federal income tax and a deduction from gross income on account of taxes alleged to have been paid to a foreign government ($47,-380.27). The Board held that only the net amount of cash received by the petitioner as dividends from the corporations should be included in the petitioner's gross income. The petitioner kept her books on a basis of cash receipts and disbursements. It further ruled that no credit or deduction should be allowed. Its decision rested on the ground that under the British income tax acts no tax is im-

posed upon the payment of a dividend and that the corporation, rather than the shareholder, is the taxpayer.

In the British practice, what we call the normal tax is referred to as "tax at the standard rate," and this is the only tax involved in the instant case. There is a supertax in the British practice corresponding to our surtax. The supertax is imposed upon and paid by the shareholder. Under the British system, the company may declare a dividend "less tax" which is a dividend less the tax "appropriate to" the dividend or a "free of tax" dividend which is the equivalent of a notional gross dividend obtained by adding thereto the appropriate tax—"the grossing up process." The corporation pays a tax at the standard rate on its profits and the shareholder pays the supertax on his notional gross dividend.

Section 131 (a) (1) of the Revenue Act of 1928 (26 U.S.C.A. § 131 and note) grants to a taxpayer a credit on tax for the "amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country." Section 23 (c) of the act of 1928 (26 U.S.C.A. § 23 note) permits a taxpayer, in computing net income, a deduction from taxes paid or accrued within the taxable year, excepting credits allowed under section 131.

█ In proof of the foreign law, the petitioner introduced an expert witness, familiar with the income tax laws of the United Kingdom, who testified that under British law the shareholder is regarded as a taxpayer in respect to the amounts deducted from the dividends for income taxes "appropriate" thereto. This proof was not contradicted and, like the proof of any other question of fact, should not be arbitrarily disregarded. The Asiatic Prince, 108 F. 287, 289 (C.C.A.2).

█ Even so, we are called upon to interpret not the British income tax acts standing alone, but sections of our Revenue Act which provide for credits and deductions. These are statutory allowances (Stanton v. Baltic Mining Co., 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546) which Congress has granted and which must be applied consistently with our principles of taxation. To do this we may accept the proof of foreign law, in so far as it describes the status of the shareholder, and, upon our independent determina-

tion, fit it into the provisions of our Revenue Act.

The petitioner introduced in evidence the United Kingdom Income Tax Act of 1918 and the annual finance acts for each succeeding year through 1934. The Act of 1918, 8 and 9, George V, c. 40, consolidated the various acts relating to income taxation. It is continued in force by annual finance acts, thus governing the imposition, assessment, levy, and collection of taxes. The British system rests upon the principle of collection at the source. Section 1 of the Income Tax Act of 1918 imposed an income tax upon individuals and corporations and, by section 4, a supertax was imposed upon individuals with incomes over a designated amount. Corporations are taxed only at the standard rate. Section 237 of the 1918 act provides that "body of persons" means "any company," and rule 1 of the General Rules, applicable to all schedules, provides that "every body of persons shall be chargeable to tax in like manner as any person is chargeable under the provisions of this Act." The standard tax paid to the Crown is imposed upon the company or "body of persons."

Income tax, therefore, is levied in the first instance on every corporation making a profit; it is paid in the year in which the profit is realized and at the standard rate for that year. If the profit is subsequently distributed in the form of a dividend, the corporation may, pursuant to rule 20 of the General Rules, deduct therefrom an amount of income tax "appropriate to" the dividend which is paid. This may be done by a dividend "free of tax" or "less tax"; the effect of both is the same. The amount deducted is determined by the rate which is in force in the year of payment and will therefore be more or less than the amount of tax directly paid by the corporation to the Crown, depending on the changes in rates made by the annual finance acts. If the amount deducted is larger, the corporation retains the benefit. The shareholder owes no direct responsibility or liability to the government. And it is admitted that the corporation does not act as collector of revenue or as agent of the shareholder. Com'r v. Blott (H.L.1921) 2 A.C. 171, 8 T.C. 101; Neuman v. Com'r (H.L.1934) A.C. 215, 18 T.C. 332. The payment of the dividend must always be accompanied by a statement in writing showing (a) the gross amount which, after deduction of the income tax appropriate thereto, corresponds to the net amount actually paid, (b) the rate and the amount of income tax appropriate to such gross amounts, and (c) the net amount actually paid. The purpose of this statement is twofold. The gross amount, inclusive of the deduction, is considered in the computation of the supertax and, likewise, in the application of relief by way of repayment for taxpayers in the lower brackets.

The expert witness, while admitting that the shareholder is not liable for direct assessment of the income tax, stated that under the theory of the British tax acts income tax is payable either by deduction or by direct assessment; and that, accordingly, the shareholder is regarded as an income taxpayer. Though Com'r v. Dalgety (H.L.1930), 46 T.L.R. 349, 15 T.C. 216, Neumann v. Com'r, supra, Com'r v. Blott, supra, and Rex v. Purdie (1914) 3 K.B. 112, would seem to indicate that even under British law the shareholder is not regarded as a taxpayer, and, though it was so held in Welch v. St. Helens Petroleum Co., 78 F.(2d) 631 (C.C.A.9), we shall accept the expert's conclusion. Nevertheless, we are convinced that under our statutes and under our principles of taxation the shareholder is not a taxpayer entitled to credits and deductions.

Our system of credits and deductions is built around a concept of direct liability for taxation and direct payment. It is not administered upon the theory of ultimate burden or the final incidence of taxation. Shearer v. Com'r, 48 F.(2d) 552, 555 (C.C.A.2). In the Shearer Case, the question was whether the purchaser of a car could deduct an excise tax which he had paid to the dealer as an item separate from the purchase price. The court, in holding that the statutory liability for the tax was upon the dealer and that therefore the deduction was properly disallowed, stated: "If the final incidence of the burden be traced, no doubt the only income, properly speaking, which has borne the tax is the customer's, for it is a fiction to treat as income a sum received by the dealer, which, except for the tax, would never have come to him at all. * * * But the final incidence of taxation is not a measure of the person on whom the tax is levied, and it

seems to us that the form of the statute must control."

In other words, our system, to describe it more accurately, looks to the statutory incidence of the tax—to the party which the taxing authority has made directly responsible.

It is admitted that under the British law the shareholder is not liable for direct assessment. He owes no direct responsibility to the taxing authority; and the corporation, a completely separate entity, pays the tax, not as the collector of revenue or as agent of the shareholder, but in discharge of a primary and sole obligation imposed upon it by the British acts. True, the shareholder may bear the ultimate burden, depending on whether the corporation declares and pays a dividend out of the profits for which it is taxed and whether, in accordance with rule 20, it elects to deduct the amount of appropriate income tax computed by the prevailing standard rate in the year of payment. Even so, he is not a taxpayer; he does not bear the statutory incidence of the tax.

But petitioner argues that the rulings and practice of the Bureau of Internal Revenue prior to 1933 have consistently granted credits and permitted deductions, and much is made of the Commissioner's failure to revoke prior rulings. S.M. 3040, C.B. IV.–1, p. 198; S. M. 5363, C.B. V.–1, p. 89; I.T. 2401, C. B. VII.–1, p. 126. It is said that, on the theory of congressional re-enactment of the statutes, these rulings have now taken the force of law. While an administrative construction so established is not binding (United States v. Missouri P. R. Co., 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322), it is entitled to respect and a court cannot lightly disregard it (Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796). But the clauses of the Revenue Act allowing credits and deductions for taxes paid to a foreign country and within the taxable year are clear without departmental interpretation. Where the law is plain, the doctrine of adoption of departmental construction by subsequent re-enactment does not apply. Louisville & N. R. Co. v. United States, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed. 672; Iselin v. United States, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566. Likewise, since such construction is not binding, a court is free to depart from it where it is plainly erroneous. See New York, N. H. & H. Ry. Co. v. Interstate Commerce Comm., 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; but see Costanzo v. Tillinghast, 287 U.S. 341, 345, 53 S.Ct. 152, 153, 77 L.Ed. 350.

[8] The rulings by the Treasury Department rested upon a misconception of the effect of British law under our statutes. We think it clear that the deductions made by the corporations here did not constitute taxes paid by the petitioner for which a credit and deduction should be allowed.

Decision affirmed.