### ELKINS v. COMMISSIONER OF INTERNAL REVENUE.

No. 6198.

Circuit Court of Appeals, Third Circuit.
July 21, 1937.

Wm. R. Spofford and Dudley T. Easby, Jr., both of Philadelphia, Pa., Freeman J. Daniels and Forrest Hyde, both of New York City (William R. Perkins, of New York City, and Ballard, Spahr, Andrews & Ingersoll, of Philadelphia, Pa., of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

William H. Hotchkiss, of New York City (John S. Breckinridge, of New York City, of counsel), amici curiæ.

Tolbert, Ewen & Patterson, of New York City (Ward V. Tolbert and John L. McMaster, both of New York City, of counsel), amici curiæ.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

The petitioner, a citizen of the United States, residing in Pennsylvania, filed his federal income tax return for 1931. It disclosed credits and deductions by reason of taxes deducted and paid directly to the United Kingdom by companies from dividends on stock owned by him. During the year, by reason of his stock holdings in British companies, he received the net amount of $23,993.72 in dividends, such dividends being accompanied by certifica-

tion that $7,017.11 had been deducted and paid directly to the British Government.[1]

Under authority of section 131 (a) (b) of the Revenue Act of 1928 (45 Stat. 791, 829), 26 U.S.C.A. § 131, and note,[2] which allows a limited credit on income taxes for taxes paid or accrued to a foreign country, and under authority of section 23 (c) of the Act of 1928, (26 U.S.C.A. § 23 and note),[3] which allows the deduction of the balance of the foreign tax paid from gross income, and relying on previous rulings and practice of the Internal Revenue Department, petitioner took a credit of $5,044.99 under section 131, and a deduction from income of $4,162.03 under section 23, the total sum of $9,207.02 being made up of the $7,017.11, deducted and paid directly by the foreign companies, and $2,189.91 paid by the petitioner directly on a surtax to the United Kingdom. Respondent, the Commissioner of Internal Revenue, disallowed the credit and claimed a deficiency on income taxes for 1931 of $4,259.94. A petition was thereupon filed by the taxpayer with the Board of Tax Appeals for redetermination, but that body, after a full hearing, held that the only amount of income taxable to the petitioner as dividends received from the British corporations was the net amount actually received. It conceded that the surtax paid to the United Kingdom on calculated dividends, amounting to $2,189.91, was a proper credit, but held that the $7,017.11 was not a British income tax "appropriate to" the dividends received. The deficiency of the petitioner was redetermined at $2,442.52, and from that redetermination this appeal was filed.

There can be no doubt that Congress has expressed its intent to relieve a taxpayer to the extent of taxes paid to a foreign government. Montgomery, in his Federal Income Tax Handbook (1936–37), p. 510, says: "The test of the deductibility of a tax is whether the tax is imposed upon the person desiring to make the deduction." Was the $7,017.11 a tax "appropriate to" dividends, directly borne by the petitioner, or was it a tax imposed upon and borne by the British companies? The answer is governed by the laws of England. It is by those laws that we must judge the nature of the tax, for only in those laws can we find the answer who

---

[1] The aggregate amounts involved are as follows:

| | Gross amount of Dividend | Amount deducted as British Income Tax by Corporation | Net Amount received in cash. |
|---|---|---|---|
| British-American Tobacco Company, Limited | $16,082.23 | $3,743.98 | $12,338.25 |
| Tobacco Securities Trust Company, Limited | 1,018.30 | 201.27 | 817.03 |
| The Imperial Tobacco Company, etc., Limited | 13,910.30 | 3,071.86 | 10,838.44 |
| | $31,010.83 | $7,017.11 | $23,993.72 |

[2] "§ 131. Taxes of foreign countries and possessions of United States

"(a) Allowance of credit. * * * The tax imposed by this title [chapter] shall be credited with:

"(1) Citizen and domestic corporation. In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and * * *

"(b) Limit on Credit. In no case shall the amount of credit taken under this section exceed the same proportion of the tax (computed on the basis of the taxpayer's net income without the deduction of any income, war-profits, or excess-profits tax any part of which may be allowed to him as a credit by this section), against which such credit is taken, which the taxpayer's net income (computed without the deduction of any such income, war-profits, or excess-profits tax) from sources without the United States bears to his entire net income (computed without such deduction) for the same taxable year."

[3] "§ 23. Deductions from gross income

"In computing net income there shall be allowed as deductions: * * *

"(c) Taxes generally. Taxes paid or accrued within the taxable year, except— * * *

"(2) so much of the income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States as is allowed as a credit against the tax under section 131."

pays the tax. United Shoe Machinery Corp. v. White (D.C.) 13 F.Supp. 97, 102. The government has conceded that physical payment by the shareholder is not essential; if the $7,017.11 was received by the petitioner actually or constructively, it would constitute a part of his dividend income from British corporations.[4]

The British law was proven as a fact in the proceedings. Petitioner introduced an expert witness familiar with the income tax law of the United Kingdom, who testified that under British law the shareholder is regarded as a taxpayer in respect to the amounts deducted from the dividends for income taxes "appropriate" thereto. This proof was not contradicted, and, like the proof of any other question of fact, should not be arbitrarily disregarded. The Asiatic Prince (C.C.A.) 108 F. 287, 289, Biddle v. Commissioner of Internal Revenue (C.C.A.) 86 F.(2d) 718, 719. Indeed in Blackmer v. Commissioner of Internal Revenue (C.C.A.) 70 F. (2d) 255, 257, 92 A.L.R. 982, the Board of Tax Appeals is specifically warned that it cannot disregard unimpeached testimony.

Any hesitancy in accepting the expert's opinion of the British law is dispelled when we consider these principles, which taken together show the shareholder is the taxpayer:

(1) In general the English income tax acts are based upon the principle of collection of tax at the source. Lord Halsbury in Laws of England, volume XVII, p. 12, says: "So far as possible, income tax is collected at the source, and persons paying rent, annual interest or annual payments deduct tax on making the payment." See, also, Hamilton v. Commissioner of Inland Revenue (1931), 215 K. B. 495. E. M. Konstam, K. C., in his work on The Law of Income Tax (6th Ed.) p. 4, states: "The person who is ultimately liable for the tax either pays it under a direct assessment, or submits to a deduction of tax at the hands of some other person from whom he is entitled to receive money; and so important is the latter method of collection that at the present day at least 70 per cent of the yield of the tax is collected by it." Konstam's conclusions and opinion are that the shareholders' income tax upon their dividends is deducted "at the source." See 6th Edition, pp. 269, 270.

(2) An English company is bound under penalties to show in its dividend warrants, not only the net amount actually paid, but the gross amount corresponding to that, and the rate and amount of income tax appropriate to that gross amount. Section 33, Finance Act of 1924. This, of course, is also information that the taxpayer needs, so that the gross amount may be considered in the computation of the super-tax, and is used as a basis for the application of relief by way of repayment for taxpayers in the lower brackets. The form of the return, although not conclusive in itself, at least is persuasive, that the payment is made by the company on behalf of the shareholder.

(3) The English method in calculating the surtax also supports the opinion of the expert. Under section 4 of the United Kingdom Income Tax Act of 1918, a super-tax is defined as an "additional duty of income tax." This tax was replaced in section 38 of the Finance Act of 1927, and called a "surtax." In determining the amount of the surtax, the gross amount of a dividend declared, before deduction of income tax, is used. It is not likely Parliament would use as a base for determining "additional income tax" a tax paid by the company directly. Specifically, the Board has allowed petitioner a deduction for the payment of his surtax of $2,189.91. That figure is arrived at by computing his total gross income, including tax paid at source. This figure being accepted as correct, it is but a recognition of the fact that the deduction at the source was income tax "appropriate to" the dividend petitioner received.

(4) The deductions made from dividends paid on shares bearing a fixed rate indicate that the shareholder is paying the tax and not the company. See Ashton Gas Co. v. Attorney General, (1906) A.C. 10, where the shares bore a preference dividend limited to 10 per cent., and it was held the company could not pay a 10 per cent. "free of tax" dividend. Notwithstanding the contractual obligation to pay a certain fixed dividend, the company deducts what the shareholder is required to pay and pays it at the source to the Crown.

(5) The language of the taxing statutes would indicate that it is the shareholder who pays the tax through this process

---

[4] Page 10 of respondent's brief states: "If these amounts were *received* by the petitioner, either actually or construc-tively, they would constitute a part of his dividend income from British corporations."

of withholding or deduction. The wording is always if a person "has paid any tax, by deduction or otherwise," or "has been charged with tax by deduction, or otherwise." See Income Tax 1918, part III, section 29 (1), part IV, section 55 (1), part X, section 211 (1). See General Rules Incomes Tax 1918, sections 20, 23. See Finance Act 1920, section 27 (1).

(6) If the payment is not made on behalf of the shareholder, why does the English law permit relief and rebate of the payment to taxpayers in the lower brackets? Income Tax Act 1918, 8 and 9 George V, chapter 40, part III. The simple effect of this provision is to return to the taxpayer tax withheld from income which was not subject to a tax, but which the company was in the first instance required under the law to pay to the Crown. [5]

We refrain from discussing the English authorities cited by both sides as giving comfort to the opposing contentions. We do so because of the admission of the expert on English income tax law that the point here at issue has never risen in any case. [6] We accept the English law, as stated by the expert, that the tax is paid by the shareholder by deduction, especially when this is buttressed by the principles above stated.

Judge Manton in Biddle v. Commissioner of Internal Revenue, supra, (C.C.A.) 86 F.(2d) 718, at page 719, conceded the force of the expert's statement of the foreign law, but refused to follow it because he said "we are called upon to interpret, not the British income tax acts standing alone, but sections of our revenue act which provide for credits and deductions." He then concludes that our Revenue Act and "our system of credits and deductions is built around a concept of direct liability for taxation and direct payment." 86 F.(2d) 718, at page 720. [7] We respectfully differ with the learned Judge's conclusions. In the first place the Government, as noted (4), supra, has conceded that direct payment is not essential. Indeed, the doctrine of constructive receipt and payment is recognized in our system. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918. And in the second place, the revenue act expressly allows a credit for payment of foreign income tax. The only question we are concerned with is: Did the petitioner pay the income tax, and to ascertain this we must see what happened in England; what kind of a tax was paid; who paid it? There, we must find as a fact it is income tax paid by deduction or otherwise "by the shareholder".

---

[5] Mr. Talbot, the British expert, testified (page 124): " * * * provision is made for the relief of such persons from taxation and an individual whose total income from all sources does not exceed 100 pounds per annum is entitled to exemption from income tax altogether. By reason of the operation of the principle of deduction of income tax at the source, many hundreds of thousands of people in England, although their particular incomes are exempted from income tax by law, receive their income in the form of dividends from which income tax has been or purports to have been deducted by the dividend-paying companies. At the end of the income tax year, these people present to the Inland Revenue Department at the office of the district inspector for their locality, claims for repayment of taxes deducted from their dividends * * * In the course of my service as a district inspector, I must have paid out of the National Exchequer many millions of pounds sterling, which could have been paid out properly only if tax deducted from the dividends of the dividend-paying companies was tax paid by the recipients of those dividends."

[6] Mr. Talbot testified (page 141): "In my experience in income tax administration, extending over twenty years, the point at issue in this case, namely, whether or not the tax in question was paid by the company or paid by the shareholder, has never arisen and I doubt that it could arise. It has never been questioned in England that when tax is deducted the deduction constitutes a payment of tax."

[7] Note that United Shoe Machinery Corporation v. White (D.C.) 13 F.Supp. 97, 102, proceeds on an entirely different ground. It admits that the question involved is one of foreign law, and is, therefore, one of fact for the American court to determine. " * * * the proper solution of this problem depends essentially upon the British Act and British decisions." The court then finds as a fact that under the English law, it is the company that paid the tax on dividends and not the shareholder. The same theory underlies the decision Welch v. St. Helen's Petroleum Co. (C.C.A.) 78 F.(2d) 631. Judge Wilbur considers the English authorities and concludes that by these authorities the company is the taxpayer, and not the shareholder.

Three other considerations compel us to this conclusion: First, if there is any doubt as to the construction of a taxing statute—and this cannot be ignored—such doubt is resolved in favor of the taxpayer. McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304; Boca Ratone Co. v. Commissioner (C.C.A.) 86 F.(2d) 9; Crowe v. Commissioner (C.C.A.) 86 F.(2d) 796; Pinkney Packing Co. v. Thomas (D.C.) 17 F.Supp. 420. Next, the provision we are called upon to interpret is a relief provision intended for the benefit of the taxpayer and such construction should be given as will effectuate that purpose. See Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587; United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Dauphin Deposit Trust Co. v. United States (C.C.A.) 80 F.(2d) 893, 896; Commissioner v. Bryson (C.C.A.) 79 F.(2d) 397, 402.[8] Finally, the rulings and practice of the Bureau of Internal Revenue since 1918 to 1933, S.M. 3040, C.B. IV-1, p. 198; S.M. 5363, C.B. V-I, p. 89; I.T. 2401, C.B. VII-I, p. 128, granting deductions and credits, plus the congressional reenactment of the statutes, have led to people making their investments and give the rulings persuasive force and should not be disregarded by the courts. McFeely v. Commissioner, supra; Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Woolworth v. United States, (D.C.) 15 F.Supp. 679, 684; Cf. United Shoe Machinery Corp. v. White (D.C.) 13 F.Supp. 97, 101. Congress has re-enacted this provision in the revenue acts presumably knowing that the department was treating deductions by the British companies as income tax "appropriate to" the dividends of the shareholder. Beyond the purpose of the taxing authorities to exact more from taxpayers, there is no logical reason to reverse this ruling of many years which has the sanction of Congress.

So holding, the determination of the Commissioner and order of redetermination of the Board are set aside, and the Commissioner is directed to allow the petitioner a deduction and credit for British income tax deducted from his dividends.

THOMPSON, Circuit Judge, dissents.

[8] In Old Colony Trust Co. v. Commissioner (U.S.) 57 S.Ct. 813, 816, 81 L.Ed. —— (decided on May 17, 1937), there was involved the refusal by the Commissioner to allow the deduction of a charitable contribution to a trust estate. Mr. Justice McReynolds in reversing the Circuit Court of Appeals says: "The words of the statute are plain and should be accorded their usual significance in the absence of some dominant reason to the contrary. We find nothing in the regulations or practice of the Treasury Department or in the general purpose of the statute which requires the narrow meaning advocated by respondent."