INTERNATIONAL MILLING CO. v. UNITED STATES.

No. 43514.

Court of Claims.

May 29, 1939.

594

Paul E. Shorb, of Washington, D. C. (M. P. Wormhoudt, Dwight Taylor, and Covington, Burling, Rublee, Acheson & Shorb, on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit to recover $11,131.52 income taxes and interest for the fiscal year ending August 31, 1931, which the plaintiff claims have been overpaid in that amount.

The issue in the case is the proper construction of section 131 (f) of the 1928 act, 45 Stat. 829, 26 U.S.C.A. § 131 (f), which relates to the credit which a domestic corporation owning the majority of the voting stock of a foreign corporation may obtain by reason of such a corporation having paid taxes to a foreign country.

Section 131 of the act of 1928 permits a credit or deduction to be made upon income in certain cases for taxes paid to a foreign country, among which is one where a domestic corporation owns the majority of the voting stock of a foreign corporation which has paid taxes to a foreign country. The portion of the statute prescribing how the credit is to be computed reads as follows:

Sec. 131. "(f) *Taxes of Foreign Subsidiary.*—For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 23 (p)) in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: Provided, That the credit allowed to any domestic corporation under this subsection shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included. The term 'accumulated profits' when used in this subsection in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; * *."

The 1918 act in section 240 (c), 40 Stat. 1081, contained a provision for a credit under similar circumstances, but, as we shall

see later, this provision was differently worded and provided for a different method of computing the credit.

The provision now being considered first appeared in section 238 (e) of the Revenue Act of 1921, 42 Stat. 259, and has been used without substantial change through the subsequent acts, including section 131 (f) of the 1928 act above quoted under which the instant case arose.

The corresponding section of the Revenue Act of 1918 (240 (c)) reads as follows:

"For the purposes of section 238 a domestic corporation which owns a majority of the voting stock of a foreign corporation shall be deemed to have paid *the same proportion* of any income, war-profits and excess-profits taxes paid (but not including taxes accrued) by such foreign corporation during the taxable year to any foreign country or to any possession of the United States upon income derived from sources without the United States, *which the amount of any dividends* (not deductible under section 234) *received* by such domestic corporation from such foreign corporation during the taxable year *bears to the total taxable income of such foreign corporation upon or with respect to which such taxes were paid: Provided,* That in no such case shall the amount of the credit for such taxes exceed the amount of such dividends (not deductible under section 234) received by such domestic corporation during the taxable year. [Italics ours.]"

It will be seen that the amount of foreign taxes paid for which the domestic taxpayer was entitled to credit under the 1918 statute depended upon the proportion "which the amount of any dividends * * received * * * bears to the total taxable income of such foreign corporation upon or with respect to which such taxes were paid."

The difference is plain. In the 1921 act the words "total taxable income" were stricken out and the words "accumulated profits" were substituted and a definition of the term "accumulated profits," as used in the section, was added. The controversy in the instant case is as to the effect of these changes and particularly with reference to the meaning of the words "accumulated profits" as used in the 1921 act and subsequent statutes containing the same provision.

There is no dispute as to the facts upon which the decision depends. The plaintiff, a domestic corporation, owned during the fiscal year ending August 31, 1931, and prior thereto, all the stock of Robin Hood Mills, Ltd., a foreign corporation incorporated in Canada. On April 2, 1931, plaintiff received from Robin Hood Mills, Ltd., $1,000,000 in dividends which were paid out of the undivided profits for the years ending August 31, 1929, 1930, and 1931, the total of which was $1,720,688.09, and out of which Robin Hood, Ltd., paid a total amount of taxes of $160,340.15.

In November, 1931, plaintiff filed its Federal income tax return for the year ending August 31, 1931, and in this return included in income the amount of $1,000,000 dividends received from Robin Hood, Ltd., and claimed a credit in the amount of $106,-210.15. A claim for this credit was made on Treasury Department form 1118, commonly referred to as the "old" form, which was the regular form used by the Bureau of Internal Revenue prior to the taxable year 1931. Subsequent to the filing of plaintiff's income-tax return, additional taxes were paid to Canada by Robin Hood, Ltd., on its income for the year 1931.

Plaintiff's income-tax return claimed a foreign tax credit of $106,210.15 and disclosed a tax due of $143,892.87 which was paid by the plaintiff to the collector in quarterly installments.

Thereafter the Commissioner of Internal Revenue determined that plaintiff's claim for credit for foreign taxes was overstated and the proper amount allowable was $96,-252.63. As a result of other reductions in plaintiff's net income (not now in controversy) an additional tax of $7,514.08 was assessed and paid by the plaintiff with interest.

In determining that plaintiff's foreign tax credit was $96,252.63, the Commissioner used the "new" form 1118. The terms "new" form and "old" form will be hereinafter explained.

For many years prior to August, 1930, the consistent practice of the Commissioner was to determine the credit allowable under section 131 (f) of the Revenue Act of 1928 in accordance with the method shown in the "old" form. Subsequent to August, 1930, the consistent practice of the Commissioner was to determine the credit allowable under section 131 (f) of the Revenue Act of 1928 in accordance with the method shown by the "new" form.

On August 6, 1934, the plaintiff filed a claim for refund on the ground that it was entitled to a credit for foreign taxes paid

in the amount of $106,681.15. The Commissioner redetermined the plaintiff's foreign tax credit and computed it to be $95,975.18. Thereupon this suit was brought.

The method of calculating the credit to which the taxpayer was entitled under the Revenue Act of 1918 is perfectly clear. The ratio or proportion is ascertained by dividing the amount of any dividends paid to the domestic corporation by the total profits of the subsidiary, and the formula for the purposes of the calculation is as follows:

$$\frac{\text{Dividends received}}{\text{Total profits of subsidiary}} \times \text{Foreign tax accrued or paid} = \text{Credit.}$$

The plaintiff claims that the ratio or proportion under the statutes from 1921 to 1928, and thereafter, should be ascertained by dividing the amount of dividends received by the accumulated profits and that the formula would be—

$$\frac{\text{Dividends received}}{\text{Accumulated profits of the subsidiary}} \times \text{Foreign tax accrued or paid} = \text{Credit.}$$

This formula is what is called the "old" form and, as before stated, is what was used by the Commissioner beginning with the act of 1921 down to and including the act of 1928 until about August, 1930. From and after the date last named, the Commissioner used a formula which is as follows:

$$\text{Foreign tax accrued or paid} \quad \frac{\text{Accumulated profits of subsidiary}}{\text{Total profits of subsidiary}} \times \frac{\text{Dividends received}}{\text{Accumulated profits of subsidiary}} \quad \begin{array}{l}\text{Taxes deemed} \\ \text{to have been} \\ \text{paid on profits} \\ \text{distributed as} \\ \text{dividends.}\end{array}$$

This is ordinarily referred to as the new form.

It will be noticed that in determining the ratio, this formula uses two fractions in the first of which "accumulated profits of subsidiary" are used as the numerator and in the second they are used as the denominator. Consequently in the multiplication called for by the formula the accumulated profits will be canceled out of the two fractions with the result that the formula in fact is the equivalent of—

$$\text{Foreign tax accrued or paid} \times \frac{\text{Dividends received}}{\text{Total profits of subsidiary}} = \begin{array}{l}\text{Taxes deemed} \\ \text{to have been} \\ \text{paid on profits} \\ \text{distributed as} \\ \text{dividends.}\end{array}$$

It will be observed that this formula makes no use of "accumulated profits" as defined in the statute, nor can the form be deduced from the directions of the statute with reference to computing the credit. It is in fact, as we view it, merely a mathematical device for avoiding the method prescribed by the statute which directs in ascertaining the amount of tax paid that the same proportion shall be taken of the taxes paid to the foreign country which the "amount of such dividends bears to the amount of such accumulated profits," and in the same paragraph "accumulated profits" when used in this subsection are defined to be "the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income."

Instead of taking the ratio of the dividends received to accumulated profits, as directed by the statute, the Commissioner used, as shown above, the ratio of dividends received to the *total* profits of the subsidiary.

It will be conceded that the statute is in one respect ambiguous. While the term "accumulated profits" is explicitly defined in the law, the definition is not entirely consistent with the use of the term in another part of the statute. In the first part of the statute it is stated that the domestic corporation shall be deemed to have paid "the same proportion of * * * taxes paid * * * to any foreign country * * * upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears

to the amount of such accumulated profits." In the instant case the taxes were not paid entirely "upon" the "accumulated profits" as defined in the statute, but were paid upon the total profits. They were, however, as we think, paid "with respect to" the accumulated profits, which is an alternative under the statute—necessarily so, because unless so construed the words "with respect to" mean nothing and might just as well have been omitted. The term "with respect to" means "with reference or relation to," or "pertaining to," and applies to the "accumulated profits * * * from which such dividends were paid." These terms are descriptive in their application and not necessarily restrictive—that is, confined to one class when there is more than one in the same situation. Here it could be said that the taxes were imposed "upon" or "on" the "accumulated profits" and they were also imposed on the "total profits" which included the accumulated profits. While the statute is not clearly worded, we think a consideration of the section as a whole shows its intent. Congress having specifically defined the term "accumulated profits," this definition must be either accepted or discarded entirely. It is only by entirely rejecting or striking out this definition that the construction contended for by defendant can be sustained. There is no alternative. Certainly Congress did not intend that it should be discarded but that it should be used, and it must be used as a whole for it can not be separated into parts. The words "with respect to accumulated profits" would seem to have been intended as meaning merely taxes that were applied to accumulated profits as defined in the statute, without considering the fact that they were also applied to the remainder of the total profits.

■ There is another matter which should be considered in determining the intent of Congress as expressed in the 1921 act and statutes subsequent thereto. The 1918 act was clear and definite. It did not use the words "accumulated profits" but instead "total profits" and it included no definitions because they were unnecessary. Under it the amount of the credit would be ascertained by the same formula as now used by the Commissioner. All of this must have been clearly understood by Congress and if that body had intended that the same result should follow under the 1921 act and acts subsequent thereto, would it not have used the same language instead of using differ-

ent terms which were defined in the statute? What object could there have been in so doing except to prescribe a different method of computing the tax and obtaining a different result? We think it must be concluded that Congress with the 1918 act before it deliberately decided to prescribe a different method as explained by Senator Smoot in the manner shown in the next paragraph, otherwise it would have simply retained the 1918 form.

The legislative history of the statute in question supports the construction contended for by plaintiff. The revenue act of 1918 made no mention of accumulated profits and definitely provided that the ratio of the credit should be that which the amount of dividends bore to the total taxable income of the foreign corporation upon which the taxes were paid. When the act of 1921 was before the House of Representatives, the provisions in controversy were not in the bill as passed by the House, but when the bill came before the Senate, Senator Smoot offered an amendment including them. In answer to questions with reference to the meaning of the new provision, the Senator explained how it would work in a hypothetical case. It is not necessary to set out the language used in the debate as it is conceded by the defendant that the explanation and example given by Senator Smoot are in accord with plaintiff's contention. In the ordinary course, the amendment with Senator Smoot's explanation went to both Senate and House and was ratified, thus showing the understanding of Congress as to how the amendment should be construed.

■ The Smoot amendment first appeared in section 238 (e) of the Revenue Act of 1921 and was used without change through the subsequent acts, including section 131 (f) of the 1928 act. The old form (1118) which was used by the Bureau of Internal Revenue prior to the taxable year 1931 provided that the amount of tax payments made by the foreign subsidiary should be multiplied by the ratio of the amount of dividends received to accumulated profits. This, as before stated, was the consistent practice of the Commissioner prior to about August, 1930, and is the method which plaintiff now contends should be used. Not until the issuance, in February, 1933, of Regulations 77 under the revenue act of 1932 did the regulations contain the formula used by the Commissioner in the case now before the court. It is a well settled doctrine that much weight will be given to a

long continued construction of an indefinite or ambiguous statute by the executive department charged with its administration. National Lead Co. v. United States, 252 U. S. 140, 145, 40 S.Ct. 237, 64 L.Ed. 496. One important reason for this rule is that where the practice is long continued Congress must be presumed to be aware of the administrative practice and by failing to take any legislative action has evidenced that this practice was in accordance with the intention of the legislators. Subsequent to the enactment of the 1921 Revenue Act, the acts of 1924, 1926, and 1928 were passed, each making a practically complete revision of the income tax laws. During this period and as we have above noted, up to August, 1930, the Bureau made no change in its administrative practice, and Congress has not altered the law up to the present time. While these facts are not conclusive, they furnish another support to the contentions of the plaintiff.

Lastly it must be said that the decisions of the courts have also supported plaintiff's contention. The same issue as the one here involved was considered by the court in the case of F. W. Woolworth Co. v. United States, 91 F.2d 973, certiorari denied, 302 U.S. 768, 58 S.Ct. 479, 82 L.Ed. 597, and the Circuit Court of Appeals for the Second Circuit in determining what credit should be given the plaintiff for taxes paid by its Canadian subsidiary also applied the rule which we have approved in what is stated above.

The exact question involved in the case now before us was not considered in the case of Peavey & Co. v. United States, 55 F.2d 516, 73 Ct.Cl. 600. The court did, however, in a computation made in one of its findings follow the rule which we have laid down above and in its opinion applied it in construing section 238 (e) of the 1921 act.

In the argument on behalf of defendant attention is called to the case of Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 278, 76 L.Ed. 587, and it is correctly said that this case held that the object of legislation allowing individuals or domestic corporations to deduct credit for taxes paid to foreign countries was to avoid double taxation. The opinion rendered in that case calls attention to the fact that in computing the taxable income of a citizen of the United States he is credited with the amount of any income taxes paid to a foreign country and that in the same way the

Revenue Act of 1921 allowed "a credit to a domestic corporation, against its income tax here upon dividends received from its foreign subsidiary, of a proportionate part, *as defined,* of the income taxes paid by that subsidiary to 'any foreign country.'" [Italics ours.]

We think the case last cited supports the plaintiff's contention rather than being against it. As we construe the statute it prevents double taxation. It must be admitted that the plaintiff, owning all the stock of the Canadian corporation, in effect paid all the Canadian taxes and its situation was no different in this respect than it would have been if it had conducted the Canadian concern as a branch establishment. If the plaintiff does not get full credit for the taxes paid in Canada it is doubly taxed as much as an individual would be who paid taxes in a foreign country and failed to get credit therefor.

Our conclusion is that a comparison of the present statute with the act of 1918; a consideration of the language of the statute, especially the definition of "accumulated profits" contained therein; the legislative history of the section under consideration and the decisions of the courts, all sustain the contention of the plaintiff as to the manner in which its credit for foreign taxes should be computed.

It follows from what has been stated above that the plaintiff is entitled to recover and the petition asks for judgment for $11,-131.52 with interest. The parties to the action may file a stipulation as to the amount for which plaintiff is entitled to judgment under this opinion with interest from specified dates, if they can so agree. If not, the court will have the calculation made and judgment entered accordingly.

BOOTH, Chief Justice, and WILLIAMS, and WHALEY, Judges, concur.

LITTLETON, Judge, is of opinion that in determining the allowable credit to the domestic corporation, in view of the statutory definition of the term "accumulated profits," the ratio of the dividends received by the domestic corporation to the accumulated profits of the foreign subsidiary is to be applied to the proportion of the tax paid by the subsidiary to the foreign country "upon or in respect to the accumulated profits of such corporation" rather than to the total tax paid by the foreign corporation to the foreign country upon or with respect

to the total net taxable income of such foreign corporation—that is, that the tax paid by the foreign corporation to be used as a basis for the credit is the proportion of foreign tax attributable to the foreign corporation's "accumulated profits" available for distribution as dividends to the domestic corporation.