**ABBOT LABORATORIES INTERNATIONAL COMPANY, a Delaware corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 53 C 809.**

United States District Court N. D. Illinois, E. D. March 26, 1958.

9. Woolley on Delaware Practice, Secs. 388 and 1001.

324

Baker, McKenzie & Hightower, Chicago, Ill., for plaintiff.

Robert Tieken, U. S. Atty., N. D. Ill., Chicago, Ill., Donald S. Lowitz, Asst. U. S. Atty., Chicago, Ill., Charles K. Rice, Asst. Atty. Gen., James P. Garland and Philip R. Miller, Attys. Dept. of Justice, Washington, D. C., for defendant.

CAMPBELL, District Judge.

Plaintiff, a domestic corporation organized under the laws of the State of Delaware, brings this action for refund of taxes paid by it in respect of its corporate returns for 1946, 1947 and 1948. Plaintiff claims that certain taxes alleged to have been paid by it to the Governments of Argentina and Colombia should be allowed as credits against tax for the years in question under Section 131 of the Internal Revenue Code of 1939 (26 U.S.C.A. § 131). So far as material here, Section 23, dealing with deductions from gross income, provides:

"In computing net income there shall be allowed as deductions:

"(c)(1) Taxes paid or accrued within the taxable year, except—
* * *

"(C) income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States, if the taxpayer chooses to take to any extent the benefits of section 131;".

So far as material here, Section 131 provides:

"(a) If the taxpayer chooses to have the benefits of this section, the tax imposed by this chapter * * shall be credited with:

"(1) In the case of a * * * domestic corporation, the amount of any income, war-profits, and excess-

profits taxes paid or accrued during the taxable year to any foreign country * * *".

During the years 1946, 1947, and 1948, plaintiff held a 95 per cent interest in Abbot Laboratories de Argentina, Sociedad de Responsibilidad Limitada (S.R.L.) and Abbot Laboratories de Colombia, S.R.L.

From the common law point of view, a Sociedad de Responsibilidad Limitada, under both Argentine and Colombian law, is a hybrid, possessing some of the characteristics of a partnership and some of the characteristics of a corporation. An exhaustive discussion of its nature is not necessary here. Suffice it to say that it falls squarely within the definition of a corporation under Treasury Regulations 111, (1939 Code) Section 29.3797–4:

"* * * if an organization is not interrupted by the death of a member or by a change in ownership of a participating interest during the agreed period of its existence, and its management is centralized in one or more persons in their representative capacities, such an organization is an association taxable as a corporation * * *"

During the years 1946, 1947, and 1948, plaintiff received no distribution out of the earnings or profits current or accumulated of the Sociedades in question. Accordingly, plaintiff reported no income from the Sociedades in its 1946, 1947, and 1948 Federal income tax returns. However, plaintiff did report income, in respect of its own activities within Argentina and Colombia, from the sale of goods in those countries and miscellaneous income, as follows:

|  | From sales etc. in Argentina: | From sales etc. in Colombia: |
|---|---|---|
| 1946 | $446,016.24 | $359,993.68 |
| 1947 | 699,163.91 | 400,273.63 |
| 1948 | 950,343.06 | 304,040.39 |

This income was not taxed in Argentina and Colombia. The foreign tax credit sought by plaintiff involves taxes imposed upon the income and patrimony of the Sociedades. It is stipulated that under Argentine and Colombian law, plaintiff was primarily liable for the following taxes attributed to it on the basis of its 95 per cent interest in the Sociedades:

In respect of the Argentine S.R.L.:

|  | Income Tax: |  |
|---|---|---|
| 1946 | 137,307.03 | Pesos |
| 1947 | 112,101.67 |  |
| 1948 | 200,800.56 |  |

In respect of the Colombian S.R.L.:*

|  | Income Tax | Excess Profits Tax | Patrimony Tax |
|---|---|---|---|
| 1946 | None | None | 28,267.70 Pesos |
| 1947 | " | " | 13,795.93 |
| 1948 | 43,805.71 Pesos | 23,156.77 Pesos | 10,134.54 |

The above taxes were paid by the Sociedades out of the current profits, except the Colombian patrimony taxes for 1946 and 1947, which were paid out of capital. In addition the Argentine S.R.L. paid excess profits taxes as follows:

| 1946 | 77,988.22 | Pesos |
|---|---|---|
| 1947 | 12,597.51 |  |
| 1948 | 61,538.59 |  |

* The stipulation is not clear whether the figures shown represent the entire Colombian tax or that portion properly attributable to plaintiff on the basis of its 95% interest in the S.R.L. Under the stipulation all figures are subject to recomputation by the parties.

In its Federal return for 1946, plaintiff did not claim any of the above taxes as credit under Section 131 or as a deduction under Section 23(c). Upon audit, however, a revenue agent allowed plaintiff a deduction under Section 23(c) in the sum of $15,529.60 for the 28,267.70 pesos in patrimony taxes paid in its name to Colombia. In its return for 1947 plaintiff claimed only a $7,569.78 deduction under Section 23(c) for the 13,795.93 pesos in patrimony taxes paid in its name to Colombia. The revenue agent allowed the deduction but valued it at $5,538.90. In its return for 1948 plaintiff claimed a tax credit under Section 131 for the Argentine and Colombian income taxes. This claim was disallowed. After payment of the 1948 deficiency, plaintiff filed timely claims for refund of federal income taxes paid for all three years, 1946, 1947, and 1948.

Plaintiff's new position in its claims for refund and in this action may be summarized as follows: It took all the above listed Argentine and Colombian taxes, except the Argentine excess profits taxes, into income for the years paid, as constructive dividends to it. It then claimed all of those taxes, except the Argentine excess profits taxes, as credits against tax under Section 131(a). Finally, having treated the Argentine income taxes as constructive dividends to itself, it claimed a portion of the Argentine excess profits taxes as "deemed to have been paid" by it within the meaning of Subsection (f) of Section 131 and therefore as credit against tax under that Section.

Plaintiff cannot be sustained in its claim with regard to the Argentine excess profits tax under Subsection (f) of Section 131. The Subsection provides:

"For the purposes of this section, a domestic corporation which owns at least 10 per centum of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits".

■ The dividends which are to serve as numerator of the fraction contemplated by Subsection (f) are dividends *paid from* the accumulated profits which serve as the denominator of the fraction.

Subsection (f) further provides:

"The term 'accumulated profits' when used in this subsection in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income * * * *".

■ This definition requires that a foreign income tax imposed "with respect to" the subsidiary's profits, at least where such tax is paid out of such profits, be deducted from the profits to arrive at "accumulated profits". It follows, therefore, that plaintiff's constructive dividend being the Argentine income tax paid out of and in respect of the subsidiary's profits, cannot serve as numerator of the fraction contemplated by Subsection (f) since by definition such dividend was not *paid from* the accumulated profits.

■ Moreover, in my opinion, plaintiff is not required to report the Argentine income taxes and the Colombian income and excess profits taxes as constructive dividends to it, unless it can be held to have "paid" those taxes within the meaning of Section 131(a). The latter is the central question in this case.

I shall discuss first only the question with regard to the Argentine income taxes and the Colombian income, and excess-profits taxes. Plaintiff maintains

that this question is foreclosed in its favor by the stipulation that under Argentine and Colombian law it had the primary liability to pay the tax. Its position cannot be sustained on a proper interpretation of Biddle v. Commissioner, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431.

That case involved an individual taxpayer who was a stockholder in a United Kingdom corporation. During the year in question, he received a dividend from that corporation. At the time, the corporate tax structure in England was as follows: A standard rate tax was levied on the income of corporations. If what remained was distributed as dividends the Income Tax Act required that such dividend be accompanied by a statement of the amount of tax paid by the corporation "appropriate" to the dividend. The stockholder was not required to pay the standard rate tax on the dividend received, however, he was required to pay surtax, and, for purposes of determining whether the surtax is due, his income would include not only the dividend received but also the tax "appropriate" thereto. If this amount (dividend plus tax appropriate thereto) fell within the stockholder's exemptions he could recover a portion or all of the tax appropriate thereto. If this amount came within the surtax figure, he would have to pay surtax thereon. In the Biddle case, one of the questions presented was whether taxpayer is entitled to a credit for the English tax "appropriate" to his dividend under Section 131 of the 1938 Code (Section 131, 1939 Code).

In the Supreme Court, the Biddle case was consolidated with Elkins, involving the same question. In both cases the Board of Tax Appeals held that under English law the legal burden of the tax "appropriate" to a dividend is upon the corporation, notwithstanding that an expert testified to the contrary, and that therefore taxpayer was not entitled to the tax credit sought. 33 B.T.A. 127.

The Biddle case went to the Court of Appeals, Second Circuit, and the decision of the Board was affirmed, 86 F.2d 718.

The Elkins case went to the Court of Appeals, Third Circuit, which reversed the Board, on the ground that the expert's testimony was correct as to the English law, 91 F.2d 534. There cannot be any doubt that the Board and the Court of Appeals in both cases regarded the English law as determinative of the question who "paid" the tax. In the Biddle case the Court of Appeals said:

"It is admitted that under the British law the shareholder is not liable for direct assessment. He owes no direct responsibility to the taxing authority; and the corporation, a completely separate entity, pays the tax, not as the collector of revenue or as agent of the shareholder, but in discharge of a primary and sole obligation imposed upon it by the British Acts", 86 F. 2d 718, 721.

Before the Supreme Court handed down its opinion in the Biddle case, the Court of Appeals, Second Circuit, had the same question before it again in F. W. Woolworth v. United States, 91 F.2d 973, and it confirmed its view in the Biddle case. The taxpayer again claimed that the English tax "appropriate" to the dividend was "paid" by him within the meaning of the foreign tax credit section and the court said:

"We might agree  *  *  *  if the plaintiff could point to a legal duty laid upon shareholders which was discharged,  *  *  *  but it cannot do so", 91 F.2d 973, 975.

The court merely said that it might agree if the plaintiff could point to a legal duty. In this case it is stipulated that the legal duty to pay the tax was laid in the first instance upon plaintiff and the question before me is therefore whether this fact requires me to conclude that plaintiff "paid" the tax within the meaning of Section 131(a). I am satisfied, on a reading of the Supreme Court opinion in the Biddle case that it does not. The Supreme Court, faced with two opposing interpretations of English law, stated:

"Section 131 does not say that the meaning of its words is to be determined by foreign taxing statutes and decisions, and there is nothing in its language to suggest that, in allowing the credit for foreign tax payments, a shifting standard was adopted by reference to foreign characterizations and classifications of tax legislation". 302 U.S. 573, 578–579, 58 S.Ct. 379, 381.

Viewing the matter in the light of our own taxing statute, it is hard to see how plaintiff can be sustained in its position that it "paid" the Argentine income tax and the Colombian income and excess profits tax. Under our taxing statute the Sociedades must be regarded as corporations. Plaintiff so regarded them when it did not report its distributive share of the net profits of those ventures. Had the Argentine income taxes and the Colombian income and excess-profits taxes been levied against the subsidiaries, as was the case with the Argentine excess-profits taxes, plaintiff's claim to a credit could only have come under Subsection (f) of Section 131. Plaintiff has not received any dividends within the meaning of Subsection (f) from its Argentine and Colombian subsidiaries during the years in question and thus it would not have been entitled to a credit under Subsection (f). It should be noted here that the Revenue Act of 1918, Section 240(c) (the predecessor of Subsection (f)) did not contain the wording of the present provision indicating that the foreign taxes for which credit can be claimed, are taxes paid "upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid". This wording was inserted in Section 238(e) of the Revenue Act of 1921 with the intention that a parent receiving dividends paid from accumulated profits should be entitled to credit for taxes paid upon or with respect to such accumulated profits regardless of the year in which such taxes were paid. Cf. American Chicle Co. v. United States,

316 U.S. 450, 453, 62 S.Ct. 1144, 86 L. Ed. 1591.

Plaintiff would now be protected against a loss of the credit allowable under Subsection (f) should the profits upon which the Argentine income and the Colombian income and excess-profits taxes were paid be distributed to it in subsequent years.

■ Notwithstanding this, plaintiff claims that it is entitled to a credit for those taxes under Subsection (a) of Section 131, free of the dividends received limitation of Subsection (f), and subject only to the limitations of Subsection (b). It is true that Subsection (f) refers to foreign taxes paid by the subsidiary, while Subsection (a) refers to foreign taxes paid by the parent. However, reading the two Subsections together, I am unable to agree with plaintiff that the question whether the taxes were paid by the subsidiary or were paid by the parent must turn solely on the legal incidence of the taxes under the foreign law. Subsection (f) speaks of foreign taxes "paid or deemed to be paid by such foreign corporation". In my view the words "deemed to be paid" in Subsection (f) cannot be taken as a reference to foreign law. And, if they do not refer to foreign law, then neither do the words "paid" in Subsections (f) and (a).

■ The Argentine income and the Colombian income and excess-profits taxes were paid out of the undistributed profits of the subsidiaries under an agreement between plaintiff and the subsidiaries that they should be so paid. I do not attach much importance to the fact that both the Argentine and the Colombian taxing statutes and procedural laws adopted thereunder required the managers or attorneys-in-fact of non-resident shareholders to withhold the tax before making distribution to such non-residents (see Rev.Rul. 57-348, I.R.B.1957–44, 22). It is significant, however, that the Argentine Procedural Law makes the Sociedades themselves ultimately responsible if the tax be not

paid, and the Colombian Income Tax law makes the attorney-in-fact of the non-resident personally liable for the tax so long as he exercises his powers as such. These facts viewed in the light of our own tax statute, as the Biddle case (supra) requires, and with due regard to the provision of Subsection (f) of Section 131 which preserves the credit for taxes paid in respect of the accumulated profits of a subsidiary until such time as the accumulated profits are distributed to the parent, lead me to the conclusion that plaintiff can claim the credit for the Argentine income taxes and the Colombian income and excess profits taxes only when it receives distribution out of the accumulated profits upon which the taxes were paid.

My conclusion here would be the same even if I were to accept plaintiff's contention that, under Section 131(a), one must look to the foreign law on the issue who paid the taxes.

In American Chicle Co. **v.** United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591 the Supreme Court clearly held that Section 131 must be interpreted in the light of its purpose which is to avoid double taxation. The court there adopted one of two competing interpretations of Subsection (f) of Section 131 because it "accomplishes that result" 316 U.S. 450, 452, 62 S.Ct. 1144, 1145. Plaintiff maintains that "double taxation" is merely a "catch phrase;" that the real purpose of Section 131 was to "equalize" tax treatment as between taxpayers who draw their income wholly from sources within the United States and taxpayers who draw their income partly or wholly from sources without the United States.

Even if the idea that Section 131 was primarily designed to avoid "double taxation", is an idea which will not do justice to Congressional intentions in all cases, plaintiffs proposed substitution does not commend itself to me in this case. It will be recalled that during the years 1946, 1947, and 1948, plaintiff received substantial income from sources within Argentina and Colombia, which income was not taxed abroad but was subject to tax here.

Reduced to its essentials, what plaintiff means by "equalizing" tax treatment is this: If a taxpayer receives income from abroad which income is tax free abroad but is taxable here, equalization of tax treatment requires that he should be given credit for taxes paid abroad on income which is not taxable here. The difficulty with this argument when applied to the facts of the instant case, is that the income upon which the Argentine income taxes and the Colombian income and excess-profits taxes were paid, is taxable here but taxable only when realized on distribution. It is no "equalization" of tax treatment for Congress to provide that a select group of taxpayers should have it within their power to postpone the time for the realization of foreign income indefinitely, while at the same time using the foreign tax paid on such income, to lessen their tax burden in this country.

Plaintiff supports its argument at this point by reference to Dexter, 47 B.T.A. 285; Edward J. Nell, P-H, T.C.Memo. 52,265 and Helvering v. Campbell, 4 Cir., 139 F.2d 865. The facts in all those cases are similar. In all of them taxpayers had income from only one foreign country and no income from sources within the United States. They paid tax to the foreign country on a larger portion of such income than was subject to tax in this country. The Commissioner, in each case, sought to reduce the foreign tax credit to a fraction of the foreign tax paid, using so much of the foreign income as was recognized in this country as the numerator and so much of the foreign income as was subject to the foreign tax as the denominator. It is significant, and in my view fatal to plaintiff's reliance upon those cases, that the Board in rejecting the Commissioner's formula, in I. B. Dexter, said: "The respondent trespassed into the realm of legislation in developing the formula he applied in determining the deficiency. We find nothing in the legislative history of the provision limit-

ing the credit which is in conflict with the result reached. Petitioners' income from sources within the United States is not escaping United States tax. They did not have, in fact, any income from sources within the United States. The result reached avoids double taxation, that is, taxing the same income twice, which admittedly was the purpose of Congress in enacting Section 131." 47 B.T.A. 285, 291.

Plaintiff, it is true, had no income from sources within the United States during the years 1946, 1947, and 1948. But, none of the cases cited by plaintiff, involve a tax credit where some portion of it is allowed to reduce federal tax liability on income other than the very income upon which the foreign tax was levied. Plaintiff here seeks to apply the tax credit solely to the reduction of taxes on income other than the very income upon which the foreign tax was paid. This ground for distinguishing the cases cited by plaintiff does not involve an unwarranted compartmentalization of incomes and taxes. An examination of the cases will show that the foreign and domestic taxes were levied on the same gross income, only the taxable income was different because of deductions available here which were not available abroad.

Those cases are clearly distinguishable on another basis. In those cases, the portion of taxpayers' foreign income which was taxed abroad but which was not taxed here was not taxable here at any time. In this case that portion of plaintiff's foreign income which was taxed abroad but which it was not required to report here is taxable here but taxable only when realized on distribution, and plaintiff controls the time of such distribution. I am unable to say that Congress intended, in Section 131, to vest plaintiff with the advantage which this situation presents. I am fortified in this conclusion by the fact that Congress canvassed this type of situation in Subsection (f) of Section 131.

■ In my opinion, the intention of Congress expressed in that Subsection

can best be effectuated, in this case, by holding that plaintiff is not entitled to credit for the Argentine income taxes and the Colombian income and excess profits taxes under Section 131(a) ; and by holding, as a corollary to this, that the taxes should be deemed to have been paid by its subsidiaries within the meaning of Subsection (f) of Section 131, so that no gap is left in the scheme of that Section. I so hold.

My conclusion that in any event plaintiff cannot be regarded as having paid the Argentine income taxes and the Colombian income and excess-profits taxes is confined to the situation presented in this case. It may be that a stockholder who cannot qualify for treatment under Subsection (f) of Section 131, and who has no control over the distribution of the profits of a foreign corporation, should be given credit under Subsection (a) where it appears that the tax paid by the corporation has been levied against him, and where he stands to lose the credit if he were to wait for distribution (See Reg. 118, 39.131(d)-1 (b) ; Rev.Rul. 288, 1953-2 Cum.Bull. 27; I.T. 3683 (1944) C.B. 290).

I shall now discuss the Colombian patrimony taxes. This issue involves problems which do not arise with regard to the other taxes. Plaintiff contends that the Colombian patrimony tax is an "income * * * tax" within the meaning of Section 131(a) or a "tax paid in lieu of a tax upon income * * * otherwise generally imposed by any foreign country * * *", within the meaning of Subsection (h) of Section 131.

■ The patrimony tax is a tax designed to reach the earning capacity of inactive capital. In an opinion rendered on October 7, 1938, (Gaceta Judicial No. 1942, Nov. 1938 at p. 330) the Supreme Court of Colombia stated, among other things, that "Its origin or reason for being lies in the fact that each patrimony is presumed to have a certain productive capacity; so that, if its owner, through abandonment or for any other reason or group of reasons, does not obtain that productive capacity, the State is

not to be the victim * * *". It is clear from that opinion, also, that in Colombian tax philosophy the patrimony tax is regarded as an indivisible part of the income and excess-profits taxes. But this does not argue that it is an income tax within the meaning of Section 131 (a).

In Lanman & Kemp-Barclay & Co. of Colombia v. Commissioner, 26 T.C. 582, the Tax Court squarely held that it is not. The court pointed out that the question whether the tax is an income tax within the meaning of Section 131(a) must be decided under criteria established by the Internal Revenue laws of the United States. Where property is involved, under our law income tax is imposed only upon realized gains. In its decision that the Colombian patrimony tax is not an income tax within the meaning of Section 131(a) the Tax Court was much influenced by the fact that "the taxpayer's own expert witness testified that it was possible for a taxpayer to be liable for a patrimony tax in a year when the taxpayer has no income and is not liable for the income tax". 26 T.C. 582, 588. No expert testimony is needed on this point here, because the facts are that in 1946 and 1947 this Colombian S.R.L. had no income but only loss and yet it paid patrimony tax during those years.

This fact serves to distinguish the Colombian patrimony tax from the French tax involved in Keen v. Commissioner, 15 B.T.A. 1243; Hatmaker v. Commissioner, 15 B.T.A. 1044; and Wallace v. Commissioner, 17 B.T.A. 406. The French income tax law required that foreign domiciliaries owning one or more residences in France should pay an income tax on income presumptively fixed at a sum equal to seven times the rental value of the residences. The presumption was rebuttable, but apparently only in favor of the Government. The Board held that the tax so computed was an income tax within the foreign tax credit provision. It is stretching the analogy of those cases too far to say that a tax imposed upon the value of certain assets without reference to gain and which is payable parallel to and independently of a general tax on income, is a tax on presumed income.

Nor is it possible to say that it is a tax "in lieu of a tax upon income * * * otherwise generally imposed * * *" within Subsection (h) of Section 131. A tax which runs parallel to a tax upon income generally imposed, is not a tax "in lieu" of the income tax. (Cf. Regulations 118, 39.131(h)–1(b). Moreover, it is clear from the report of the Senate Committee which adopted Subsection (h) (Sen.Rep.No. 1631, 77th Cong.2d Sess. pp. 131–132), cited in the Lanman case, that a tax imposed on capital without reference to production or sales will not qualify as a tax in lieu of a tax upon income. Accordingly, I hold that the Colombian patrimony tax is not an income tax nor a tax in lieu of a tax upon income within the meaning of Section 131(a), and (h).

The question now remains whether plaintiff may deduct the patrimony taxes against income under Section 23(c), as "Taxes paid or accrued within the taxable year". Plaintiff was allowed such deductions for the years 1946 and 1947 without being required to report the amount of such taxes as income. Those deductions cannot now be disputed. In its brief, plaintiff claims the right to such deduction in 1948. It is not clear whether, in this claim, plaintiff intends to stand by its original position that it is required to take the tax into income.

In any event, the problems presented here are not disposed of either by my holding that the Colombian income and excess-profits taxes were not "paid" by plaintiff within the meaning of Subsection (a) of Section 131, or by my holding that it is not required to take those taxes into income for the year 1948. Both holdings must be understood in their context which is that plaintiff does not claim the Colombian income and excess-profits taxes as deductions under Section 23(c) and that, on the special facts of this case, those taxes must be deemed to have been paid by plaintiff's

subsidiary within the meaning of Subsection (f) of Section 131.

In my view, the questions presented here are controlled by Subsection (d) of Section 23, which provides:

"The deduction for taxes allowed by subsection (c) shall be allowed to a corporation in the case of taxes imposed upon a shareholder of the corporation upon his interest as a shareholder which are paid by the corporation without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes".

The Colombian patrimony tax is clearly a tax "imposed upon a shareholder * * * upon his interest as a shareholder". It is not a tax which is laid against dividends (Eastern Gas & Fuel Associates v. Commissioner, 1 Cir., 128 F.2d 369). It is a tax which is laid against the shareholder's assets in the corporation. For a clear understanding of the effect of Subsection (d) in the situation presented here, it is necessary to turn to its history.

The provision first appeared in the Revenue Code of 1921 (Section 234(a) (3), 42 Stat. 254–255). It originated as a Senate amendment to H.R. 8245 (Cong.Rec. 67 Cong. 1st Sess., p. 5814). The hearings before the Senate Committee on Finance indicate that the provision was primarily intended to change the result of certain cases involving state taxes upon bank shares, (Hearings before the Committee on Finance, 67 Cong. 1st Sess., on H.R. 8245, pp. 250–251). Those cases held that certain state taxes imposed upon the value of outstanding bank shares, payable by the banks in the first instance, and recoverable by them from the dividends accruing on the shares, are taxes imposed upon the shareholder and not deductible by the banks. Eliot Nat. Bank v. Gill, D.C., 210 F. 933, affirmed, 1 Cir., 218 F. 600; National Bank of Commerce in St. Louis v. Allen, D.C., 211 F. 743, affirmed 8 Cir., 223 F. 472. On the other hand, if the shareholder desired to take the deduction, he was required to report the amount of the tax paid as part of his dividend, Hurley, 6 B.T.A. 695. As the law stood in 1921, the deduction was not available to the corporation and was meaningless to the shareholder. Congress in 1921 obviously intended that a tax assessed upon the ownership interests of shareholders and paid by the corporation should become an effective deduction at some point in the corporate tax structure.

The fact remains that Congress gave such deduction to the corporation. The shareholder benefits, but only indirectly. A direct deduction by him is retained subject to the same futility as before. He is given the deduction only if he reimburses the corporation. If he does not reimburse the corporation he is denied the deduction and relieved of the requirement that he report the tax paid on his behalf as income (Reg. 111 29.23 (d) (1)).

In the present case, this scheme of Subsection (d) has become partially inoperative. The deduction which is thus conferred on plaintiff's subsidiary has no meaning. However, I find it impossible to stretch the plain wording of that provision to confer a meaningful deduction upon plaintiff. The theory of constructive reimbursement will not do. It is true that in Wisconsin Gas & Electric Co. v. United States, 322 U.S. 526, 64 S.Ct. 1106, 88 L.Ed. 1434, the Supreme Court held that a tax levied upon and deducted from declared dividends was thereby "reimbursed" by the shareholders to the corporation which paid it. But that case involved the question whether the deduction is available to the corporation. Moreover, the court thought that it did not have to reach the question whether a tax levied on declared dividends is a tax upon the shareholder's "interest as shareholder". 322 U.S. 526, 531, 64 S.Ct. 1106, 1109. I note that in Eastern Gas & Fuel A. v. Commissioner supra, such tax was held not to be a tax upon the share-

holder's "interest as a shareholder" within the meaning of Subsection (d). The word "interest", the court observed, means ownership interest not income interest. 128 F.2d 369, 375.

Clearly, a tax levied upon the shareholder, which is not a tax upon his interest as a shareholder within Subsection (d), and which is paid by the corporation, may be deducted by the shareholder only if he takes the amount of such tax into income. Since the court in the Wisconsin Gas Co. case did not reach the question whether the tax before it was a tax which would qualify for treatment under Subsection (d), it is not possible to interpret that case as holding that the constructive reimbursement contemplated there would give the shareholder the deduction without his being required to take the full amount of such constructive reimbursement into income.

In any event, the constructive reimbursement theory of that case does not apply to the present case. The Colombian patrimony tax for 1948 was not deducted from declared dividends but was paid out of current profits. The mere fact that a tax which is paid out of current profits reduces the amount available for distribution does not constitute "reimbursement" (I.T. 1255 C. B. I-1, p. 141). Plaintiff has not reimbursed its subsidiary within the meaning of Subsection (d) either actually or constructively. I therefore hold that plaintiff is not entitled to a deduction under Section 23(c), and that it is not required to take the tax paid in its name into income.

I come to this conclusion with reluctance. The result reached under Subsection (d), in this case, is precisely the result which Congress set out to remedy in 1921. I cannot, however, go beyond the plain wording of that provi-

sion and surmise what Congress would have done if it had thought of this case. I should, perhaps, add that I find it difficult to reconcile the idea implicit in Sections 113(a) (15), 113(b) (1) (A) and 24(a) (7) with the result which I feel bound to reach here under Section 23(c).

I have been told by Government counsel, on oral argument, that the Colombian patrimony taxes are not properly chargeable to the capital account of the Colombian subsidiary under Section 24(a) (7). Under Section 113(a) (15) and 113(b) (1) (A) it is envisaged that an adjustment to basis, for such taxes as are properly charged to a subsidiary's account, will be transmitted to the parent upon complete liquidation where the parent owns over 80 per cent of the stock of its subsidiary. In the scheme of capital gains taxation, the adjustment to basis of Section 113(b) (1) (A) is the logical counterpart of the current deduction of Section 23(c) and vice versa. Although plaintiff owns 95 per cent of the assets on which the patrimony taxes were paid, and although plaintiff may ultimately be subject to our capital gains taxes with respect to such assets, the adjustment to basis is not available here. Neither is the current deduction.

It can be seen, therefore, that the scheme of Sections 23(c), 23(d), 24(a) (7), 113(b) (1) (A) and 113(a) (15), while understandable in the purely domestic context, is ill designed to cope with international situations. This is particularly disturbing where, as here, the foreign tax on corporate assets is a heavy one. I respectfully recommend the presentation of this problem to the Congress. Any attempt on my part to resolve it would constitute Judicial legislation.

Judgment is entered in favor of defendant and against plaintiff. The complaint is dismissed at plaintiff's costs.